Laura Susan BERMAN, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Laura Susan BERMAN, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. Nos. C80–1479A, C81–301A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 6, 1983.

Brian Wertheim, Decatur, Ga., James L. Graham, Hubert C. Dutro, Jr., Columbus, Ohio, for plaintiff.

Ronald A. Williamson, J. Arthur Mozley, Robert M. Finlayson, II, Phillips, Hart & Mozley, Atlanta, Ga., for defendants.

Edgar A. Neely, III, and Randall H. Davis, Neely, Player, Hamilton, Hines & Welch, Atlanta, Ga., for Adams.

Edgar H. Sims, Jr., Kutak, Rock & Huie, Atlanta, Ga., for R.P. Tucker, M.D.

Douglas R. Roberto, Asst. U.S. Atty., Atlanta, Ga., for U.S.A.

William D. Blakely, Trial Attorney, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C.

## ORDER

FORRESTER, District Judge.

These consolidated actions for wrongful death are before the court on several motions. In an order of this court dated March 30, 1983 and filed on April 1, 1983, this court disposed of several motions pend-

ing, including motions for summary judgment by defendants Cessna Aircraft Company ("Cessna"), Corporate Jet Aviation, Inc. ("Corporate Jet") and the United States of America ("United States"), as well as a motion to dismiss by defendant R.P. Tucker, M.D. ("Tucker").

## I.

Defendant Cessna has filed a motion for entry of a final judgment pursuant to Fed. R.Civ.P. 54(b) with respect to this court's order granting Cessna's motion for summary judgment. Cessna argues that the claims against it were in the nature of products liability claims, and were the only such claims involved in the litigation, and therefore certification pursuant to Rule 54(b) is warranted. In addition, Cessna points to administrative and pecuniary concerns, in that Cessna contends that if this motion is denied, attorneys must keep files open in this case as well as monitor the progress of this case. Cessna's motion has been opposed by plaintiff. Plaintiff contends that if Cessna's motion is granted, separate appeals may be necessitated which could unduly complicate this litigation.

■ Rule 54(b) provides in pertinent part as follows:

> When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Initially, the court notes that it is dealing with a final judgment. The granting of summary judgment to Cessna earlier this year is a "judgment" in the sense that it is a · ruling upon plaintiff's claim for relief sounding in negligent design and manufacture and express and implied warranty against Cessna. Furthermore, the ruling is final in the sense that it is "an ultimate disposition of an ultimate claim entered in the course of a multiple claims action." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956).

■ Whether an express determination that there is no just reason for delay is warranted is discretionary with this court. It is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal. *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980). Due to the policy against piecemeal litigation, Rule 54(b) orders should not be granted routinely or as a courtesy or accommodation to counsel. *Ryan v. Occidental Petroleum Corp.,* 577 F.2d 298, 302 (5th Cir.1978).

■ The court concludes that there is no just reason for delay. First, upon evaluation of the relationship between the adjudicated and unadjudicated claims in this case, the set of facts giving rise to the alleged legal rights in plaintiff as against Cessna is distinguishable from the remaining claims in this action. In other words, the claims decided under Cessna's motion for summary judgment are separable from the others remaining to be adjudicated. In addition, the nature of the claims adjudicated is such that no appellate court would have to decide the same issues more than once assuming that subsequent appeals occur. Second, the court notes that if Rule 54(b) certification is granted, nothing has been presented to show any possible negative impact of an immediate appeal on the remaining trial proceedings.

Therefore, this court EXPRESSLY DETERMINES that there is no just reason for delay, and EXPRESSLY DIRECTS the entry of judgment under Rule 54(b) in favor of defendant Cessna and against plaintiff. Accordingly, Cessna's motion for entry of a Rule 54(b) final judgment with respect to this court's order granting it summary judgment is hereby GRANTED.

## II.

Defendant United States' Motion to Permit Late Filing and Brief in Support is GRANTED.

## III.

In the Second Amended Complaint, plaintiff demands judgment in the form of compensatory damages against all the defendants jointly and severally, and punitive damages against the defendants Tucker and United States. Both defendants Tucker and United States have filed a motion to strike that portion of the prayer from the Second Amended Complaint dealing with punitive damages.

■ Defendant United States argues that plaintiff is statutorily prohibited from obtaining punitive damages from the United States. The court agrees. 28 U.S.C. § 2674 provides in pertinent part as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

As the United States Supreme Court stated in 1921: "The purpose for which the Government permitted itself to be sued was compensation, not punishment." *Missouri Pacific Railroad Co. v. Ault,* 256 U.S. 554, 564, 41 S.Ct. 593, 597, 65 L.Ed. 1087 (1921). Accordingly, defendant United States' motion to strike is GRANTED.

Defendant Tucker argues that inasmuch as this is a wrongful death action, punitive damages are not recoverable under Georgia law. Plaintiff responds by contending that a denial of punitive damages to plaintiff in this case would violate her right to equal protection as guaranteed by the United States Constitution. Therefore, the textual source implicated is the fourteenth amendment, which provides, in pertinent part, that, "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." Specifically, plaintiff contends that the preclusion of the recovery of punitive damages in a wrongful death context is a violation of the equal protection clause, inasmuch as such a denial is arbitrary and capricious and is not rationally related to any legitimate state interest which serves any important governmental objectives. Plaintiff asserts that the arbitrary classification encompasses all tort claimants with a wrongful death claimant being treated differently than a claimant who suffered personal injury or property damage. Defendant has responded by arguing that under the Georgia wrongful death statute, all claimants are treated alike since none can recover punitive damages.

■ It appears well settled that in Georgia, punitive damages are not recoverable in a wrongful death action, notwithstanding the intentional or willful act of the defendant. *See Engle v. Finch,* 165 Ga. 131, 139 S.E. 868 (1927); *Truelove v. Wilson,* 159 Ga.App. 906, 907, 285 S.E.2d 556 (1981); *see generally* 8 Encyclopedia of Georgia Law, *Death by Wrongful Act,* § 98. In addition, it appears well settled that the Georgia statute which has allowed punitive damages generally in tort actions [O.C.G.A. § 51–12–5; Off.Code Ga. § 105–2002 (Harrison)] applies with regard to survival actions only and not with regard to wrongful death actions. *See Roescher v. Lehigh Acres Devt., Inc.,* 125 Ga.App. 420, 421, 188 S.E.2d 154 (1972) (Evans, J., concurring specially). As such, the wrongful death statute involves a legislative classification which allows punitive damages in certain personal injury actions but denies punitive damages in wrongful death cases.

■ The classification at issue does not involve any suspect class. The classification is based neither upon racial criteria nor upon certain other immutable human attributes, such as national origin, alienage, gender, or illegitimacy. Nor does this classification affect fundamental rights, such as the right to vote. Thus, this classification is to be examined with neither the strict scrutiny nor intermediate standard of review. As such, the classification must be rationally related to a legitimate state purpose. *See, e.g., Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 93–94, 98 S.Ct. 2620, 2640–41, 57 L.Ed.2d 595 (1978); *Massachusetts Board of Retirement v. Mur-*

*gia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Williamson v. Lee Optical,* 348 U.S. 483, 488, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955). As the Court in *McGowan v. Maryland,* 366 U.S. 420–26, 81 S.Ct. 1101–1105, 6 L.Ed.2d 393 (1961), stated:

> The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any set of facts may be conceived to justify it.

In the instant case, it is conceivable that the disallowance of punitive damages represents a legislative determination that a state's interest in protecting defendants from excessive damages outweighs its interest in punishing or deterring misconduct. *See In Re Air Crash Disaster,* 644 F.2d 594, 610 (7th Cir.1981). As one district court has noted in examining this issue: "The criminal justice system exists to deter the taking of life and provides a much greater deterrent than a punitive damage award to heirs of a decedent against a guilty party, which award under most circumstances involving homicide would likely be difficult to collect." *Johnson v. International Harvester Co.,* 487 F.Supp. 1176, 1179 (D.N.D.1980).

The Georgia legislature in granting a right to recover which did not exist at common law made a distinction between damages that go to the injured party himself and damages that go to his estate; a recovery for injuries causing death for the benefit of survivors suggests more speculative aspects. *See Cyr v. B. Offen & Co.,* 501 F.2d 1145, 1148–49 n. 2 (1st Cir.1974). In fact, the Georgia Supreme Court in 1932, in rejecting the argument that subjecting a tortfeasor to more than compensatory damages is violative of the equal protection and due process clauses of the Constitution, characterized the wrongful death statute as "penal in that the measure of the recovery is the full value of the life of the deceased, irrespective of its real value to the person in whom the cause of action is vested." *Western & Atlantic Railroad Co. v. Michael,* 175 Ga. 1, 14, 165 S.E. 37 (1932). Although a rule which provides for punitive damages for conduct which injures but denies punitive damages for the same conduct when it kills may be perceived as anomalous or inequitable, *see Martin v. United Securities Services, Inc.,* 314 So.2d 765 (Fla.1975) (the Florida Supreme Court, for public policy reasons, affirmed their rule of allowing punitive damages for wrongful death), the Georgia position is clear—punitive damages are not recoverable in a wrongful death action irrespective of the intentions or willfulness of the act of the defendant.

This is a legislative imposition of a penalty upon the person who causes the death of another by negligence, the penalty to go to the person injured. It is penal in that the measure of the recovery is the full value of the life of the deceased, irrespective of its real value to the person in whom the cause of action is vested. In a case of aggravating circumstances, can the jury give additional damages, either to deter the wrongdoer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff? "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." Civil Code (1910) § 4503. To hold that the jury can award additional exemplary damages under this section would have the effect of imposing upon the person committing the homicide a double penalty. While the legislature could impose double damages, such intention is not to be imputed to it, except in cases which are clear and free from doubt. The right to sue at all depends upon this statute. The amount of recovery is fixed by it, and excludes exemplary or punitive damages.

*Engle v. Finch,* 165 Ga. 131, 134, 139 S.E. 868 (1927). Therefore, given the rational basis standard announced in *McGowan v. Maryland, supra,* the court concludes that plaintiff's not being able to recover punitive

damages does not violate her right to equal protection of the laws. Indeed, the landmark decision in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires federal courts to follow state law—not to make it.

Accordingly, defendant Tucker's motion to dismiss and strike from plaintiff's second amended complaint the prayer for punitive damages in the sum of $5 million is GRANTED.

## IV.

In this court's order dated March 30, 1983, it was held that neither Dr. Tucker, as an aviation medical examiner, nor Mr. Turtelot, as a designated flight examiner, were employees within the meaning of the Federal Tort Claims Act (FTCA) such that the government is responsible for the alleged negligence of these individuals. Accordingly, the court granted the United States' motion for summary judgment as to plaintiff's allegation that the United States is responsible for the alleged negligence of Dr. Tucker and Mr. Turtelot. The court, however, reserved a ruling on the issue of whether the United States can be held liable due to any negligence on the part of the FAA itself in its failure to supervise or control its examiners, and asked for briefing on the issue, noting that the parties failed to address this allegation specifically. The parties having filed briefs and evidentiary materials on behalf of the issue, the court considers the issue now ripe for consideration.

The government provides a three-prong argument. First, it contends that the supervision of independent contractors is a discretionary function within the meaning of 28 U.S.C. § 2680(a), and that this case is analogous to those situations where courts have held that the awarding of contracts and the supervision of contractors under those contracts are discretionary functions of the federal government. Second, the government contends that its supervision of the independent contractors does not give rise to a duty to this plaintiff. Finally, it contends that under Georgia law, there is no duty for an employer to supervise prop-erly the actions of an independent contractor.

In reply, plaintiff disputes each of the legal positions taken by the defendant and presents the following facts to show the government's failure to supervise and control. As to Dr. Tucker, a senior medical examiner, plaintiff points to an explicit policy of the FAA to evaluate continually the performance of each medical examiner, and argues that the FAA's continued designation of Dr. Tucker as a senior medical examiner was negligent and in clear disregard of the information available to it. Plaintiff's allegation of negligence on the part of Dr. Tucker centers around his failure to perform a complete and adequate EKG examination of Mr. Turtelot in February of 1978. As to Mr. Turtelot, plaintiff alleges that notwithstanding the apparent deterioration of Mr. Turtelot's physical condition in the spring of 1978, the FAA did not investigate the reason for this deterioration, nor did it take any action to limit his authority as a designated pilot examiner.

The FTCA waives the sovereign immunity of the United States for the torts of federal employees by granting federal district courts jurisdiction over suits for damages caused by the negligence or wrongful acts or omissions of any employee of the government. 28 U.S.C. § 1346(b). Although the Act precludes federal liability for the torts of an independent contractor, *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *see Gowdy v. United States,* 412 F.2d 525 (6th Cir. 1969), inasmuch as the employees for whose torts the United States accepts liability in *respondeat superior* must be employees of a "federal agency," 28 U.S.C. § 2671, the employment of an independent contractor does not necessarily insulate the United States from liability for its own employees' independent acts of negligence which occur in connection with the work of an independent contractor. *See, e.g., Logue,* 412 U.S. at 532–33, 93 S.Ct. at 2221–22 (United States not liable for the negligence of employees of independent contractor, but case remanded to determine if federal employee was

negligent); *Aretz v. United States,* 604 F.2d 417 (5th Cir.1979), *reh'g granted en banc,* 616 F.2d 254 (5th Cir.1980), *on reh'g,* 635 F.2d 485 (5th Cir.1981) (per curiam) (en banc), *certified question answered,* 248 Ga. 19, 280 S.E.2d 345 (1981), *decision reinstated,* 660 F.2d 531 (5th Cir.1981) (en banc) (Former Fifth Circuit case) (federal government held liable under FTCA to an employee of an independent contractor). *Cf.* O.C. G.A. §§ 51–2–4; 51–2–5 (general rule that an employer is not responsible for the torts committed by an independent contractor is subject to six exceptions). Furthermore, the Act does not provide a waiver of sovereign immunity to claims which arise from a governmental employee's performance of a discretionary function or duty. 28 U.S.C. § 2680. Accordingly, within the framework of the FTCA, liability of the United States "is consistent with the Act if there was some distinct act (1) of negligence (2) by governmental employees, which was (3) operational [as opposed to discretionary]." *Aretz,* 604 F.2d at 428. As such, for plaintiff to prevail under the FTCA, plaintiff must be able to assert the following: Employees of the FAA, acting as governmental employees, were negligent in their failure to institute disciplinary action against Dr. Tucker and to limit Mr. Turtelot's authority as a designated FAA flight examiner, these omissions being an operational rather than a discretionary function or duty.

The central question then is whether the FAA's failure to act with respect to the acts or omissions of Dr. Tucker and Mr. Turtelot is a discretionary function or duty within the meaning of 28 U.S.C. § 2680(a). Recently, the judges comprising the Eleventh Circuit Court of Appeals fully examined the discretionary function exemption to the FTCA in *Payton v. United States,* 679 F.2d 475 (5th Cir.1982) (Unit B en banc). Utilizing an historical approach, the court initially noted that in the seminal case of *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Supreme Court made a binary distinction between those decisions made at the planning level as being discretionary from those made at the operational level. The court of appeals, noting that "[i]f strictly followed, this lan-

guage would exempt from the FTCA all but the most fortuitous events," 679 F.2d at 479, found that in the later decisions of *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and *Rayonier v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1956), the Supreme Court "narrowed the *Dalehite* guidelines." 679 F.2d at 479. Finally, in concluding that "[d]iscretionary decision-making is accompanied by nondiscretionary acts of execution, whether termed operational, ministerial, or clerical," 679 F.2d at 480, the court of appeals quoted the following passage from *Aretz:*

> [T]he fact that the negligence may have occurred in connection with a discretionary function does not make the negligent act a discretionary function. Nor does the discretionary character of the government's initial ... undertakings govern whether a duty can arise out of those undertakings. The Tort Claims Act deals with sovereign immunity—that is, with whether the United States may be sued for certain torts; it does not define ... torts.

679 F.2d at 480 (quoting *Aretz,* 604 F.2d at 431 n. 18). In other words, "[i]t must be remembered that the question at hand here is the nature and quality of the discretion involved in the acts complained of." *Smith v. United States,* 375 F.2d 243 (5th Cir. 1967).

■ Defendant cites to *Taxay v. United States,* 345 F.Supp. 1284 (D.D.C.1972), as authority for the contention that the evaluation of an individual's performance, the decision to authorize an individual to issue certificates, and the evaluation of the manner in which an individual performs his duties call into question the weighing of values and opinions; and thus are all discretionary. In *Taxay,* the court granted the government's motion to dismiss on a claim that defendant had wrongfully and intentionally interfered with a prospective business advantage of the plaintiff, a designated medical examiner whose appointment as such would not be renewed after redesignation for such for several years. In so granting, the court found that the factors bear-

ing on the decision of whether to appoint any examiner occur at the planning level of governmental activity. Here, in contrast, the allegations focus on the failure of the FAA to act at all, even though on the facts available to it, some action was necessary. Deciding whether to retain the services of a person may be discretionary; the negligent failure to make a decision may not. *Cf. Williams v. Grier,* 196 Ga. 327, 337–38, 26 S.E.2d 698 (1943) (foreseeability is primary touchstone for negligence in Georgia law). As the Supreme Court in *Indian Towing* held, while the decision to operate a lighthouse was discretionary, there was no discretion to operate the light negligently. *Compare Taxay with Downs v. United States,* 522 F.2d 990, 997 (6th Cir.1975) (FBI agents, allegedly negligent in their handling of a hijacking, are not involved in formulating governmental policy) and *Fair v. United States,* 234 F.2d 288 (5th Cir.1956) (allegations that government was negligent in releasing an individual with knowledge of his homicidal tendencies and in failing to exercise reasonable care in connection with a psychiatric examination do not fail to state a claim upon which relief can be granted).

■ Assuming the FAA's failure to discipline Dr. Tucker and to limit Mr. Turtelot's authority as a designated pilot examiner encompass some sort of governmental official acts, basing liability against the government on allegations of negligence would not create a fear of a threat of damage suits that would stultify governmental decision making. In other words, such allegations do not impinge upon the traditional basis for immunity from suits arising from official acts.

[I]mmunities are found largely upon the same principle: An unhampered and efficient Government which treats its citizens equitably is the objective sought, and this can be best effected when the officers through whom the Government acts are permitted to make their decisions free from the threat of personal liability for the consequences of those determinations. Immunity has been evolved with a view toward protecting those activities of government officials which require that a conclusion be drawn or a choice be made. Those who perform ministerial acts, it is true, may be immune from personal liability, but usually only when the performance is in the prescribed manner. Thus the scope of immunity largely correlates with the needs of the Government. Its broadness in the area of discretionary action encourages the free exercise of judgment, and its narrowness in the area of ministerial duties assists in insuring that acts required to be performed in a certain way will be so performed.

*Developments in the Law—Remedies against the United States and its Officials,* 70 Harv.L.Rev. 827, 837 (1957). A failure to decide to consider discipline or consider limiting one's authority for inadequate performance is not a decision by administrators which would necessitate an avoidance of judicial scrutiny. Assessing liability for a failure to carry out a government function when such failure impacts upon anyone who may reasonably rely upon the government to be at work fulfilling the role it has assumed, will not thwart the inefficiency and effectiveness but will encourage it.

In summary, the court concludes that allegations here of independent and distinct negligence on the part of FAA officials or employees in failing in their legally imposed obligation to "supervise" or "evaluate" representatives of the government are cognizable under the FTCA. Whether the government's alleged negligence in not disciplining Dr. Tucker or in failing to limit Mr. Turtelot's authority as a designated pilot examiner is the proximate cause of the death of plaintiff's decedent is a question for the factfinder. *See, e.g., Williams v. Kennedy,* 240 Ga. 163, 240 S.E.2d 51 (1977); *Bussey v. Dawson,* 224 Ga. 191, 193, 160 S.E.2d 834 (1968).

## V.

In the course of deciding the summary judgment motion as respects the liability of the FAA for failure to supervise, the court had occasion to review the statutes and regulations by which examiners are selected, appointed and supervised. Such exam-

iners, the court learned, are not "contracted for" as was the jail in *Logue, supra.* [*See* 28 U.S.C. § 1346(b)]. Instead, the Administrator of the FAA is authorized to delegate to any properly qualified private person the function of examining and the issuance of certificates, subject to such regulations, supervision and review as he may prescribe. 49 U.S.C. § 1355(a). With the medical certificates, the authority to grant has in fact been delegated to aviation medical examiners such as Dr. Tucker. 14 C.F.R. 67.25, *et seq.* These "representatives" are selected by the Federal Air Surgeon. 14 C.F.R. 183.11(a).

■ These examiners, to a much greater extent than the local jailers in *Logue,* are acting on behalf of a federal agency within the definition contained within 28 U.S.C. § 2671. Further, the court notices that in *Logue* the degree of supervision of the jailers by the Bureau of Prisons was a question of fact. Because of the fact that FAA examiners are carrying out a direct function of government, which by statute is under the supervision of the Administrator of the FAA, the court is no longer convinced as a matter of law that they are not employees under 28 U.S.C. § 2671 and, in any event, now considers the question of whether they are independent contractors to be subject to dispute. Accordingly, the court, *ex mero motu,* reconsiders its previous grant of summary judgment on this point. For the reasons stated above, it is now DENIED.

## CONCLUSION

Cessna's motion for entry of a final judgment pursuant to Fed.R.Civ.P. 54(b) is GRANTED. The United States' motion to permit late filing is GRANTED. The United States' motion to strike is GRANTED. The motion to dismiss and/or strike by defendant Tucker is GRANTED. The United States' motion for summary judgment is DENIED on the issue of the FAA's negligence as to its acts or omissions with respect to Dr. Tucker and Mr. Turtelot, and upon reconsideration, the government's motion for summary judgment on its liability for the negligence of the two examiners is DENIED.