## ATLANTA & WEST POINT RAILROAD CO. *v.* COLEMAN.

1. The statute of limitations applicable to a suit against a railroad company under the Civil Code (1910), § 2755, to recover a penalty of one thousand dollars for a failure to sell tickets of a connecting railroad company at the price or rate fixed by the railroad commission for passage over the lines of such connecting roads, is that provided by the Civil Code (1910), § 4370, for suits by informers to recover any fine, forfeiture, or penalty.
2. The provision contained in the Civil Code (1910), § 4374, to the effect that infants, idiots, or insane persons, or persons in prison, who labor under such disabilities "when the cause of action accrues," shall be entitled to the same time, after the disability is removed, to bring an action, as is prescribed in the code for other persons, has no application to suits by informers to recover penalties; and the statute of limitations applicable to actions of that character is not suspended so as to allow an infant the same time, after becoming of age, to bring such a suit as is prescribed for other persons, before the bar of the statute will attach.

JULY 15, 1914.

Action for damages. Before Judge Bell. Fulton superior court. May 8, 1913.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.
*S. Holderness* and *Watkins & Latimer,* contra.

LUMPKIN, J. Lurleen Coleman, by her next friend, brought a suit against the Atlanta and West Point Railroad Company to recover a penalty of $1,000, under Civil Code (1910), § 2755, because of the alleged refusal of the company to comply with section 2753 in regard to selling tickets over a connecting line at the price fixed by the railroad commission for passage over the lines of such connecting roads. It was alleged that the transaction which formed the subject-matter of the suit occurred on January 29, 1910, and that

the plaintiff then was and still is a minor. The suit was begun on August 12, 1912. The defendant demurred to the petition, one ground of demurrer being that the action was barred by the statute of limitations of one year applicable to suits brought by informers (Civil Code (1910), § 4370). The demurrer was overruled, and the defendant excepted.

The exemptions from the operation of statutes of limitations commonly granted to infants do not rest upon any fundamental doctrine of the law, but upon the legislative will expressed in the statutes. Infants could be put upon the same footing as adults in this respect; and unless excepted, they so stand. Schauble v. Schulz, 137 Fed. 389 (69 C. C. A. 581); Vance v. Vance, 108 U. S. 514, 521 (2 Sup. Ct. 854, 27 L. ed. 808). Where a statute limits the time for commencing actions given by it, unless such statute expressly excepts minors, or they are exempted by some general law from being barred, the limitation will apply to them. 25 Cyc. 1262; Mewburn's Heirs v. Bass, 82 Ala. 622 (2 So. 520); Norton v. Mayor etc. of New York, 38 N. Y. Supp. 90 (16 Misc. 303); Hines v. Weaver, 84 Ga. 265 (10 S. E. 741). Whether the statutory limitation for an action of the character here brought was suspended in favor of infants, so that they would not be barred, was thus not a matter of fundamental right but of legislative intent.

It has been held that an action by an individual for a penalty authorized by a statute is to be classified with actions by informers, relatively to the statute of limitations, so as to be barred in one year from the time the defendant's liability thereto is discovered or by reasonable diligence could be discovered. Civil Code (1910), § 4370; Western Union Telegraph Co. v. Nunnally, 86 Ga. 503 (12 S. E. 578).

Section 4374 of the Civil Code of 1910, which was also contained in former codes, reads as follows: . "Infants, idiots, or insane persons, or persons imprisoned, who are such when the cause of action accrues, shall be entitled to the same time, after the disability is removed, to bring an action, as is prescribed in this code for other persons." It is contended that this language is broad enough to include actions by informers, and that, the last code having been adopted with both sections in it, the statute as to actions by informers does not run against an infant during its minority. If the language of the code is clear and unambiguous, and works this re-

sult, it must be followed, no matter how absurd the result may be. But if it is open to a different construction, then the origin and history of the legislation on the subject, which was codified in these sections, may be considered in reaching a correct conclusion. The colonial act of March 26, 1767, fixed a limitation of six months upon the bringing of suits for penalties, fines, or forfeitures, and contained no exception in favor of minors. Several acts touching limitations of actions of different kinds were passed, and in some of these exceptions were made in favor of infants; but they did not change the limitation as to suits for penalties and forfeitures. In 1856 (Acts 1855-6, p. 233) a general statute of limitations was enacted, apparently dealing with the entire subject. A number of its sections declared the limitations applicable to various specified classes of actions. Then followed a provision that when any person entitled to sue "as aforesaid" may labor under any of certain specified disabilities, including infancy, they shall be entitled to sue "within the time aforesaid," after such disability may be removed. The words quoted show that the exceptions related to limitations already declared. The limitation on actions for a fine, penalty, or forfeiture was not one of these. In a later section of the act a limitation of one year was declared as to these, and no exception was mentioned. It is clear that, under such an act, the exception in favor of infants did not apply to suits by informers to recover a penalty. When the first Code was codified (intended to become effective January 1, 1861, but with a postponement till January 1, 1863), the codifiers did not follow the order of the sections as set out in the act of 1856, but rearranged their provisions under a general head of "Limitations of Actions on Contracts," with sub-heads of "Periods of Limitations," "Exceptions and Disabilities," and "New Promise." By including the period of limitation applicable to actions by informers for penalties under the first head, and placing the exception in favor of infants and others under the second head, the order of the act of 1856 was reversed. The words "as aforesaid" and "within the time aforesaid" were also omitted as not suitable to a code, and the time allowed to persons under stated disabilities, "when the cause of action accrues," for bringing the action after the removal of the disabilities, was to be the same "as is prescribed in this code for other persons." Code of 1863, § 2867. This arrangement has since been preserved in later codes.

Was it intended by this change in position and language to change the law so as to make the exceptions to the statute of limitations apply to actions by informers for the recovery of penalties? In view of the history of the legislation, the purpose of permitting suits by informers, and the language of the code itself, we think not.

The primary purpose of legislation imposing penalties and authorizing suits by informers is in general, not compensation, but correction or pecuniary forfeiture for doing the prohibited act. The code expressly calls the suit here authorized one for a penalty. Did the legislature ever contemplate that a penal or quasi-penal action against a common carrier was authorized to be brought by an infant—perhaps of tender years,—but that the right to so proceed should be preserved and the penalty or forfeiture could be inflicted many years afterward, when the child should have reached its majority? In regard to the particular action here involved, the number of persons authorized to sue is limited; but in many actions permitted to be brought by informers, there is no restriction upon the class of possible plaintiffs. So that, if the argument of counsel for the defendant in error were sound, in most cases of suits permitted to be brought by informers the person doing the prohibited act would remain liable to suffer the penalty until at least one year after all the minors then living in the State should become of age. That there were grown persons who could proceed, or that many minors might arrive at age, would make no difference. The action would remain open to the last possible informer after arriving at his majority. As insane persons and persons imprisoned are also included in the exception contained in section 4374 of the code, it would seem, under such a construction, that the liability to actions by informers generally would not be barred until all the lunatics had died or recovered, and all the prisoners—including those sentenced for life—had been discharged or pardoned, or had died. Did the lawmakers intend the exception to be one which would produce such arbitrary and absurd results?

The exception declared by the section quoted is in favor of infants, idiots, insane persons, or persons imprisoned, "who are such when the cause of action accrues," and the same time is allowed to bring the action, after the removal of the disability, as that allowed to persons sui juris. This contemplates the preservation of the

right to sue for persons having "a cause of action," but laboring under the named disabilities to sue. The expression "a cause of action" has been defined, from the standpoint of rights, as some particular right of the plaintiff against the defendant, together with some definite violation thereof which occasions loss or damage; and from the standpoint of duties, as some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage. This definition was given in Georgia in discussing the law of pleading; but similar definitions have been made elsewhere. *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691, 699 (13 S. E. 809); *City of Columbus* v. *Anglin*, 120 *Ga.* 785, 791 (48 S. E. 318); 2 Words and Phrases, 1015. This may not be an exhaustive definition; nor do we mean that there may not be causes of action arising from or conferred by statutes. But the expression ordinarily includes the idea of some right of the plaintiff violated or some duty to the plaintiff broken. Statutes allowing actions by informers do not include any such idea. The informer has no vested right in the forfeiture until after judgment, and a repeal of the law will abate a pending action. *Woodburn* v. *Western Union Telegraph Co.*, 95 *Ga.* 808 (23 S. E. 116). Laws of this character establish a penalty for doing or not doing some particular thing, and permit informers generally, or certain informers, to prosecute an action for such penalty. The suit before us is of that character, and not for damages. The mere statement in the petition that the defendant was liable for $1,000.15 (fifteen cents being the alleged overcharge) did not serve to change the nature of the action. The distinction between a permission to an informer, or one in the nature of an informer, to sue for a penalty, and the general right of every person with a cause of action to assert it, is manifest, as is also the reason why the legislature allowed additional time within which an infant might assert his rights or redress his wrongs.

In the case before us the action was barred by the statute of limitations, and it was error to overrule that ground of the demurrer. This being so, it would be useless to discuss other grounds.

*Judgment reversed. All the Justices concur.*