**Michael F. BRAUN, Plaintiff,**

v.

**SOLDIER OF FORTUNE MAGAZINE; et al., Defendants.**

**Michael F. BRAUN; et al., Plaintiffs,**

v.

**SOLDIER OF FORTUNE MAGAZINE; et al., Defendants.**

**Civ. A. Nos. 88–H–314–N, 88–H–315–N.**

United States District Court, M.D. Alabama, N.D.

June 22, 1990.

Order on Motion to Amend Aug. 2, 1990.

Perry O. Hooper, Sr. and John C. Cason and Moore, Kendrick, Glassroth, Harris & White, Stephen R. Glassroth and L. Gilbert Kendrick, Montgomery, Ala., for plaintiff.

Rushton, Stakely, Johnston & Garrett, F. Chadwick Morriss, James W. Garrett, Jr. and Dennis R. Bailey, Montgomery, Ala. and Hogan & Hartson, E. Barrett Prettyman, Jr., Washington D.C., for Soldier of Fortune and Omega.

Gastwirth, San Pedro, Cal., pro se.

## MEMORANDUM OPINION AND ORDER

HOBBS, Chief Judge.

On August 14, 1989, defendants Soldier of Fortune Magazine, Inc. and Omega Group, LTD filed motions for summary judgment on plaintiffs' claims. On February 12, 1990, defendants supplemented their motion. The plaintiffs responded on February 20, 1990, to which the defendants replied on February 26, 1990.

### FACTS

On August 26, 1985, Shawn Trevor Doutre stood in Richard Braun's driveway and fired at Braun's car with a MAC 11 automatic pistol as Braun drove from his driveway. Braun rolled out of his car, falling face down onto the driveway. Doutre ran over to Braun, and fired two rounds into the back of Braun's head. Braun's sixteen-year-old son, Michael, was in the car with his father. He too rolled out of the car and lay on the other side of the driveway. After killing Braun, Doutre walked over to Michael, raised his gun, but did not fire. Instead, he put his finger over his lips and ran. Michael suffered a gunshot wound to his thigh, but survived.

Doutre worked with Richard Savage. Savage had been hired by Bruce Gastwirth, Braun's business associate, to kill Braun. Gastwirth hired Savage through a personal advertisement run by Savage in Soldier of Fortune Magazine (hereinafter "SOF"). That ad read:

GUN FOR HIRE: 37–year old professional mercenary desires jobs. Vietnam Veteran. Discreet and very private. Body guard, courier, and other special skills. All jobs considered. Phone (615) 436–9785 (days) or (615) 436–4335 (nights), or write: Rt. 2, Box 682 Village Loop Road, Gatlinburg, TN 37738 (97).

Michael and his older brother Ian Braun filed claims against SOF, its parent company Omega Group, and Gastwirth for the wrongful death of their father. Michael

also has a separate action against these defendants for his injuries.

## DISCUSSION

### a. The Defendants' Duty to Screen Personal Advertisements

■ The defendants SOF and Omega Group seek summary judgment, asserting that both the First Amendment and principles of tort law forbid imposing liability on a publisher for advertisements printed in its publications which do not overtly promote illegal transactions. They argue that the words "gun for hire," and "all jobs considered" are at best ambiguous, and that imposing liability on a publisher for publishing ambiguous ads is overburdensome. Thus, they argue, the Court should determine that the defendants had no duty to screen its personal ads and pull this particular advertisement from its want ad section.

■ The defendants' argument that the ad's ambiguity released the publisher from any duty is not well taken. Where the ambiguity lies in whether an ad, on its face, suggests murder for hire, the Court is unwilling to rule that lack of precision in drafting absolves the defendants. Applying the familiar balancing test applied in *Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830 (5th Cir.1989) and accepted under Georgia law, *Ely v. Barbizon Towers, Inc.*, 101 Ga.App. 872, 115 S.E.2d 616 (1960), this Court believes that the likelihood and gravity of the possible harm from an advertisement which, on its face, implies that the advertiser is available to kill others is so great, and that the social utility of advertising criminal activity is so small, that imposing a duty on the publisher not to publish the ad is justified.[1] *See* Prosser & Keeton, *The Law of Torts*, § 31 at 170–71 (5th ed. 1984); *Restatement (Second) of Torts*, §§ 291, 292 (1965).

■ This is not a case where the product advertised is basically a safe product but which may have dangerous uses or propensities in the hands of certain users. *See Walters v. Seventeen Magazine*, 195 Cal. App.3d 1119, 241 Cal.Rptr. 101 (Ct.App. 1987); *Yuhas v. Mudge*, 129 N.J.Super. 207, 322 A.2d 824 (Sup.Ct.App.Div.1974). Nor is the wording of the ad so facially innocuous that, absent knowledge that the advertiser was soliciting murder contracts, the risk of murder was unforeseeable as a matter of law.[2] *Eimann v. Soldier of Fortune Magazine*, 880 F.2d 830 (5th Cir. 1989). Rather, the Court believes that the language of this advertisement is such that, even though couched in terms not explicitly offering criminal services, the publisher could recognize the offer of criminal activity as readily as its readers obviously did. *See United States v. Hunter*, 459 F.2d 205, 213 (2d Cir.), *cert. denied*, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972). Of course, in this Court's opinion the foreseeability of the criminal activity is ultimately a question for the jury, and that is where this case should be decided.[3]

1. The defendants argue that Georgia law does not impose a duty on a defendant to control the acts of third person except where a special relationship exists between the defendant and that third person or the person injured. Georgia law, however, does impose a duty on defendants where the defendant's affirmative acts create a foreseeable risk of danger. *United States v. Aretz*, 248 Ga. 19, 280 S.E.2d 345 (1981). Thus, the Court is not contravening Georgia law in deciding that SOF has a duty not to publish advertisements that are reasonably construed as soliciting jobs which involve murdering others.

2. The defendants attempt to compare the words "gun for hire" the more commonly used phrase "hired gun," arguing that these two phrases are essentially the same. Although placing those words in Soldier of Fortune Magazine may not give them any hidden or code meaning, the placement of the words "gun for hire" in the same ad as "all jobs considered," "discreet and very private," "professional mercenary," and "other special skills" certainly gives additional meaning to the phrase. Defendants comparison of that phrase, as used in the ad in question, with the phrase "hired gun," as used in describing politicians, lawyers, and professional expert witnesses, borders on the absurd.

3. The defendants also argue that summary judgment must be granted for want of proximate cause. As a general matter, an intervening criminal act of a third party will supersede any negligence on the part of a defendant under Georgia law, the applicable law in this case. *Rosinek v. Cox Enterprises, Inc.*, 166 Ga.App. 699, 305 S.E.2d 393, 394 (1983). "[H]owever, if the criminal act was a reasonably foreseeable

■ The defendants' argument that the First Amendment protects their ad publications is similarly rejected. While commercial speech [4] is protected under the First Amendment, that protection does not extend to advertising commercial activity which is itself illegal. *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 772, 96 S.Ct. 1817, 1831, 48 L.Ed.2d 346 (1976), *citing with approval, Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Any argument that this limit on First Amendment protection applies only to overt solicitations of criminal activity fails in light of the Supreme Court's decision in *Pittsburgh Press* and the facts of that case. There, the Court upheld the Human Relations Commission's order banning the practice of placing job opening advertisements under columns headed "Jobs—Male Interest" and "Jobs—Female Interest." The Court found that Pennsylvania law made employment discrimination based on sex illegal, that these ads, as placed in labelled columns, proposed illegal employment discrimination, 413 U.S. at 388, 93 S.Ct. at 2560, and that, therefore, the First Amendment did not apply.

■ The Court was not hindered by the ad's failure to expressly state that the employer intended to discriminate. Nor did the Court give credence to Pittsburgh Press's argument that any expression of illegal intent was clouded by the paper's announcement in its want ad section that an ad's placement in a particular column did not indicate an employer's sexual preference in hiring. After comparing the ads at issue to advertisements expressly selling prostitution or narcotics, which certainly would not be given First Amendment protection, the Court stated

[t]he illegality in this case may be less overt, but we see no difference in principle here ...

. . . . .

The advertisements ... signaled that the advertisers were likely to show an illegal preference in their hiring decisions. The First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguable outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal.

413 U.S. at 388–89, 93 S.Ct. at 2560–61. The Supreme Court's language in *Pittsburgh Press* provides ample support for this Court's decision that an advertisement which does not contain an express offer to murder others but which contains language easily interpreted as such an offer is not protected by the First Amendment.

b. Statute of Limitations on the Wrongful Death Claims

■ The defendants assert that the statute of limitations bars Michael and Ian's wrongful death claims. The statute of limitations in a wrongful death claim is determined by the nature of the injury sustained by the decedent. *Adair v. Baker Brothers, Inc.,* 185 Ga.App. 807, 366 S.E.2d 164, 165 (1988). In this case, then, the two year personal injury limitations period would apply. *Id.* Braun was killed on August 26, 1985. This complaint was not filed until March 31, 1988. Michael, however, was a minor at the time of his father's death.[5] Under Ga.Code sec. 9–3–90, the statute of limitations is tolled as to minors until they reach the age of majority. The limitations period on Michael's claim, therefore, did not begin to run until February 15, 1987 when he turned 18, placing the

---

consequence of the defendant's conduct, the causal connection between that conduct and the injury is not broken." *Id.* at 395, 93 S.Ct. at 2563. Except in indisputable cases, questions of foreseeability and proximate cause are best reserved for the jury. *Id.* The Court, therefore, will not resolve the issue of causation on summary judgment.

**4.** The defendants do not contest that the ad and its content are commercial speech which do "no more than propose a commercial transaction." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. at 385, 93 S.Ct. at 2563.

**5.** A minor is defined under Georgia law as anyone under the age of 18 years. Ga.Code sec. 39–1–1.

March, 1988 filing well within the limitations period.

Ian, however, was not a minor at the time of his father's death. Nevertheless, Ian may benefit from Michael's minority status under Ga.Code sec. 9–3–95. That statute provides that

[w]here there is a joint right of action and one or more of the persons having the right is under any of the disabilities specified in Code Section 9–3–90, the terms of limitation shall not be computed against the joint action until all the disabilities are removed. However, if the action is severable so that each person may bring an action for his own share, those free from disability shall be barred after the running of the applicable statute of limitations, and only the rights of those under disability shall be protected.

Thus, if a wrongful death claim is a joint action, a question which the Court reserves ruling on at this time,[6] Ian's claim was tolled so long as Michael was a minor.

■ Likewise, Ian's claim may be tolled under Georgia's discovery rule. That rule dictates that a cause of action in tort does not accrue for purposes of running the statute of limitations until a person knows or reasonably should know that there is injury and knows or reasonably should know the cause of that injury.[7] *Synalloy Corp. v. Newton*, 254 Ga. 174, 326 S.E.2d

470 (1985). Ian alleges that, even in the exercise of due diligence, he could not have known of the circumstances of his father's death until May, 1986 when a story appeared linking the defendants to his father's death. Whether Ian knew or could have known of the defendants' involvement prior to May, 1986 would be a question for the jury. Thus, under either approach to the statute of limitations question, summary judgment could not be granted against Ian's wrongful death claim.[8]

c. Punitive Damages

Finally, the defendants argue that the plaintiffs' request for punitive damages on the wrongful death claim must be dropped because Georgia law does not permit such damages in a wrongful death claim. *See Berman v. United States*, 572 F.Supp. 1486 (N.D.Ga.1983). The plaintiffs, however, only ask for compensatory damages with respect to their wrongful death claim, mooting the defendants' argument. Michael has asked for punitive damages under his personal injury claim, but whether the defendants acted maliciously or with an entire want of care, the standard for awarding punitive damages, *Associated Health Systems, Inc. v. Jones*, 185 Ga.App. 798, 366 S.E.2d 147 (1988), is not a question which the Court will attempt to resolve on a motion for summary judgment.

---

**6.** *See,* n. 8 infra.

**7.** The defendants argue that the discovery rule no longer applies under the ruling of *Corporation of Mercer University v. National Gypsum Co.,* 258 Ga. 365, 368 S.E.2d 732 (1988). That case held that the discovery rule does not apply to property damage cases, but did not disturb its applicability to personal injury cases. As the statute of limitations applicable to wrongful death cases is determined by the nature of the injury, and the nature of the injury in this case was personal injury, the Court finds that the discovery rule applies to this wrongful death action as it would to personal injury actions.

**8.** The Court reserves ruling on which approach to the statute of limitations question is appropriate in this case. Georgia's wrongful death statute has gone through several changes over the years. In particular, in 1985 Ga.Code sec. 51–4–3, which provided a cause of action for the wrongful death of a wife and mother was re-

pealed. In the same year, Ga.Code sec. 51–4–2, which provided a cause of action for the wrongful death of a husband and father, was amended to give a wrongful death cause of action to the "surviving spouse or, if there is no surviving spouse, a child or children" of the decedent. It is not clear under the new statute whether each beneficiary named under the wrongful death statute has a separate cause of action against the tortfeasor, *see Walden v. Coleman*, 217 Ga. 599, 124 S.E.2d 265 (1962) (interpreting old sec. 51–4–2), or whether the tortfeasor may be sued only once in a joint action by all beneficiaries. *See, Happy Valley Farms, Inc. v. Wilson*, 192 Ga. 830, 16 S.E.2d 720 (1941) (interpreting old sec. 51–4–3); *Southeastern Greyhound Lines v. Wells*, 204 Ga. 814, 51 S.E.2d 569 (1949) (interpreting old sec. 51–4–2); *Gordon v. Gillespie*, 135 Ga. App. 369, 217 S.E.2d 628 (1975) (interpreting old sec. 51–4–2). Under either the discovery rule or the joint cause of action rule, however, summary judgment could not be granted on Ian's claim.

Accordingly, defendants' motions for summary judgment are DENIED.

DONE and ORDERED.

## ORDER ON MOTION TO AMEND

Defendants Soldier of Fortune Magazine, Inc. and Omega Group, LTD request that the Court amend its order denying defendants' motion for summary judgment to permit an interlocutory appeal to the United States Court of Appeals for the Eleventh Circuit of that decision. 28 U.S.C. sec. 1292(b). The defendants argue that this Court's decision that liability may exist against these publishers despite the ambiguous language of the advertisement is "unusual" in the arena of tort and first amendment law.

As an initial matter, the defendants should not be misled by the Court's use of the word "ambiguous" to describe the ad in question. The Court does not believe that the ad's offer of criminal activity is vague. It appears reasonably clear from the advertisement's language that the advertiser is offering his services for criminal activity. Where this ad tends toward ambiguity is in its offer also to perform legitimate services. But the fact that this advertiser may be available for legitimate services in addition to criminal activities does not eliminate the unreasonable risk of criminal activity, including murder.[1] The Court rejects the defendants' position that only an advertisement stating that the advertiser is "available to kill the victim of your choice" or "assassin available for hire, all jobs considered" would be sufficiently clear to show a criminal intent; an advertisement need not be that explicit to make its meaning reasonably clear to a reasonable reader

or publisher. At the least, a trier of fact could find that the ad should have put defendants on notice that it created an unreasonable risk that someone would be the victim of a criminal act, including murder.

The defendants also argue that this Court is the first to find a publisher potentially liable for advertisements of products it does not warrant or endorse. To the contrary, a district court analyzing the same advertisement as the one before this Court found that Soldier of Fortune Magazine could be held liable if the jury found that the magazine could have reasonably foreseen that injury would flow from printing the advertisement. *Norwood v. Soldier of Fortune Magazine, Inc.*, 651 F.Supp. 1397 (W.D.Ark.1987). More importantly, however, the defendants have not directed this Court to a case dealing with an advertisement that presents a risk of harm substantially equivalent to that presented in this case. Basic tenets of tort law impose a duty on actors commensurate with the foreseeability and gravity of harm their actions present; the more dangerous the activity or foreseeable the harm, the greater the burden of taking precautions to avoid the harm. *See* Prosser & Keeton, *The Law on Torts*, sec. 31 (5th ed. 1984). Thus, the law, quite reasonably, does not impose a duty to investigate advertisers and verify the contents of their advertisements when the activity promoted is legal or where the advertisement does not indicate a solicitation to engage in dangerous criminal activity or where the harm presented is far less dangerous than murder.[2] *See Eimann v. Soldier of Fortune*

---

1. It is this distinction which makes the advertisement in this case different from that presented in *Eimann v. Soldier of Fortune Magazine,* 880 F.2d 830 (5th Cir.1989). In *Eimann,* the court found that the advertisement was "at most ... facially innocuous," offering perhaps dangerous but nonetheless legal services. *Id.* To the extent that any criminal intent could be read into that advertisement, it arose only from the context in which the ad was published. "Its bare terms reveal[ed] no identifiable offer to commit crimes." *Id.* The advertisement before this Court can hardly be classified as "facially innocuous." Nor need its criminal intent be

gleaned from the context in which it is printed. In the opinion of the Court, a trier of fact could reasonably find that its offer to engage in criminal activity was apparent in its "bare terms," and the fact that it may be construed to offer non-criminal services does not render its criminal intent ambiguous.

2. The defendants argue that the Court's ruling would hold publishers liable for advertisements promoting fast cars or selling firearms. The Court disagrees. While driving and firearm use can be dangerous and even present a significant risk of death, they present risks which the socie-

*Magazine,* 880 F.2d 830, 838 (5th Cir.1989); *Pittman v. Dow Jones & Co.,* 662 F.Supp. 921 (E.D.La.), *aff'd* 834 F.2d 1171 (5th Cir. 1977); *Walters v. Seventeen Magazine,* 195 Cal.App.3d 1119, 241 Cal.Rptr. 101 (Ct.App. 1987); *Yuhas v. Mudge,* 129 N.J.Super. 207, 322 A.2d 824 (App.Div.1974). The balance, however, changes dramatically when the advertisement is reasonably construed as an offer to engage in criminal activity, including murder. *See Eimann,* 880 F.2d at 838 (suggesting that a duty would arise if a more specific intention to engage in illegal activity was apparent from the advertisement at issue in that case).

A district court may certify an order for interlocutory appeal when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. sec. 1292(b). This Court finds neither. The Court has found only that a publisher is not absolved of a duty of care to edit or remove an advertisement that reasonably construed by a reader or a publisher offers to perform criminal acts, including murder. The Court is not of the opinion that there is a substantial difference of opinion on that narrow legal issue. Likewise, the Court does not believe that an appeal at this stage of the proceedings will significantly advance this litigation. The case has been pending for over two years and is scheduled for trial in less than five months. The parties candidly concede that following a trial more issues will be submitted for appellate review than the issue presented by defendants' motion for summary judgment. The Court believes that the interests of all parties as well as judicial economy will be served best by developing a full record of the facts in this case before it is presented to the Eleventh Circuit.

Accordingly, defendants' motions to amend the Court's order denying summary judgment and to certify this issue for interlocutory appeal are DENIED.

DONE and ORDERED.

ty has chosen to accept in return for these activities' usefulness and convenience. *See Eimann,* 880 F.2d at 837, *citing Restatement (Second) of Torts* sec. 291. Society has not made such a choice with respect to murder for hire. To the contrary, many jurisdictions in this socie-

ty, including Georgia, have found that the risk presented by this particular service is so loathsome to a civilized and ordered society that they have been willing to impose the death penalty as punishment. Georgia Code sec. 16–5–1(d).