A07A1405. DeKALB MEDICAL CENTER, INC. v. HAWKINS.
(655 SE2d 823)

ELLINGTON, Judge.

Following the grant of its application for interlocutory review, DeKalb Medical Center, Inc. ("DMC") appeals from the denial of its

motion to dismiss the plaintiff's[1] wrongful death action. DMC contends that the claim was a medical malpractice action and that the trial court erred when it failed to dismiss the claim due to the plaintiff's failure to file an expert affidavit, as required by OCGA § 9-11-9.1. It also argues that, even if the claim was not based on medical malpractice, the court erred in applying the minor's tolling provision to the statute of limitation for the wrongful death claim. For the following reasons, we affirm.

> A motion to dismiss based upon the lack of an expert affidavit is a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6). On appeal, an order granting a motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. Accordingly, we construe the pleadings in the light most favorable to the losing part[y] with the doubts resolved in their favor.

(Citations, punctuation and footnotes omitted.) *Williams v. Alvista Healthcare Center*, 283 Ga. App. 613, 613-614 (642 SE2d 232) (2007).

According to the complaint, this case arose after Tara Hawkins fell and sustained severe head trauma on November 22, 2003. When Hawkins arrived at DMC, she was unconscious; she never regained consciousness. Hawkins, who was pregnant, remained on life support for nearly four months. During that time, some of her physicians opined that she was brain dead and that her fetus would not survive. Based upon these opinions, DMC repeatedly recommended the abortion of Hawkins' fetus and the discontinuation of her life support. Hawkins' mother refused to consent to the abortion or discontinuation of life support. On March 16, 2004, a DMC nurse discovered that Hawkins had spontaneously delivered her son, Emmanuel Hawkins, without any medical assistance. Emmanuel weighed less than three pounds and suffered from numerous medical problems.

Two days after Emmanuel's birth, DMC removed Hawkins from life support, and she died the same day. There is no evidence in the record that, prior to the discontinuation of life support, Hawkins was

---

[1] The plaintiff is Nonnie Hawkins, who filed suit against DMC as the next friend and natural guardian of Emmanuel Hawkins, a minor and the son of Tara Hawkins, the decedent.

terminally ill or that her death was imminent, nor was there any evidence that her brain function deteriorated or that her prognosis changed after Emmanuel's birth. No family member, including Hawkins' mother, consented to the discontinuation of life support. Further, Hawkins did not have a "living will" or other medical directive, and there was no court order authorizing DMC to terminate life support without the family's consent.

On May 15, 2006, more than two years after Hawkins' death, her mother, Nonnie Hawkins, as the next friend and natural guardian of Emmanuel Hawkins, filed a lawsuit against DMC, Marshall Nash, M.D., and DeKalb Neurology Associates, LLC. The suit asserted medical malpractice claims against Nash and DeKalb Neurology for negligence in the treatment of Hawkins and "Malpractice Which Caused Personal Injuries to Emmanuel Hawkins in Utero." The suit also asserted a claim against DMC for "tortious termination of life support," claiming that the hospital discontinued life support without the consent of Hawkins, the consent of any family member, or a court order.

DMC filed a motion to dismiss the termination of life support claim, arguing that it was a medical malpractice claim which must be dismissed in its entirety due to the plaintiff's failure to comply with the affidavit requirement of OCGA § 9-11-9.1. DMC also contended that the claim was time-barred by the two-year statute of limitation applicable to medical malpractice claims. See OCGA § 9-3-71 (a). In response, the plaintiff argued that the claim was not a medical malpractice claim but was for wrongful death based upon the intentional tort of discontinuing life support without consent. See OCGA § 51-4-1 et seq. (wrongful death). Thus, according to the plaintiff, the two-year statute of limitation for wrongful death actions applied and, because the plaintiff (two-year-old Emmanuel Hawkins, represented by his grandmother) was a minor, the statute was tolled, so the wrongful death claim was not untimely. See OCGA §§ 9-3-33 (two-year statute of limitation for personal injury claims); 9-3-90 (a) (tolling the statute of limitation while the plaintiff is a minor); see also OCGA § 9-3-98 (OCGA § 9-3-90 applies to both tort and contract actions).

The trial court granted DMC's motion to dismiss to the extent that the tortious termination of life support claim against DMC asserted a claim based upon professional negligence, because the plaintiff had failed to comply with the expert affidavit requirements of OCGA § 9-11.9.1.[2] The court refused to dismiss the claim in its entirety, however, finding that the plaintiff had asserted a wrongful

---

[2] The plaintiff did not appeal from this ruling.

death claim based upon DMC's tortious termination of life support, that the two-year statute of limitation for wrongful death claims had been tolled due to Emmanuel's minority, and, therefore, that the claim was not barred by the statute of limitation.

1. On appeal, DMC contends the court erred when it found that the plaintiff's claim against DMC for tortious termination of life support was not a medical malpractice claim and, as a result, erred when it failed to dismiss the claim based upon the plaintiff's failure to comply with the expert affidavit requirements of OCGA § 9-11-9.1. Under OCGA § 9-3-70 (2), the term "action for medical malpractice" refers to any claim for damages resulting from the death of or injury to any person arising out of "[c]are or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment."

As noted above, the plaintiff contends that the claim is not for medical malpractice, but is based upon an intentional tort, that is, termination of life support without the patient's, family's, or court's consent. The record shows that the plaintiff is not claiming that DMC negligently cared for Hawkins prior to terminating her life support or that it negligently performed the actual process of turning off and disconnecting the life support equipment.

Under Georgia law, the decision of whether to continue or terminate life support for an incompetent adult patient who did not have a "living will" and who has no reasonable possibility of regaining cognitive functions belongs exclusively to the patient's family or legal guardian, not to the hospital, the patient's physicians, or the State. *In re L. H. R.*, 253 Ga. 439, 446-447 (321 SE2d 716) (1984); see also *In re Jane Doe*, 262 Ga. 389, 393 (2) (b), (c) (418 SE2d 3) (1992) (the parents of a comatose minor child in the final stages of a fatal, degenerative neurological disease had the authority to decide whether to terminate life support and other life-prolonging emergency measures). Moreover, a claim based upon a physician's termination of life support of a child over the objections of the child's parents constitutes a claim for wrongful death. In *Velez v. Bethune*, 219 Ga. App. 679, 680 (1) (466 SE2d 627) (1995), this Court ruled as follows:

> The allegations were sufficient to state a wrongful death claim on the basis that the infant's death resulted either from defendant's reckless disregard of the consequences, or his heedless indifference to the rights and safety of others. When coupled with a reasonable foresight that injury would probably result, this constitutes that criminal negligence equivalent to an intentional tort. . . . [The physician] had no

> right to decide, unilaterally, to discontinue medical treatment even if, as the record in this case reflects, the child was terminally ill and in the process of dying. That decision must be made with the consent of the parents.

(Citations omitted.) Ultimately, the issue in the instant case is not whether DMC violated professional standards of care (as in a malpractice case), but whether it committed an intentional tort when it deliberately terminated Hawkins' life support without the consent of the decedent, her family, or the court, and over the objections of the decedent's mother. Id.

DMC argues, however, that this is a medical malpractice case, because the plaintiff will need expert medical testimony to prove that Hawkins was not brain dead and, therefore, the termination of life support caused Hawkins' death. But the need for such expert testimony does not automatically transform this case into one for medical malpractice. Expert testimony is often introduced to prove — or disprove — that the defendant's acts or omissions caused the plaintiff's injuries in nonmedical malpractice personal injury and wrongful death actions, as well as in criminal cases. See, e.g., *Waits v. State*, 282 Ga. 1, 2 (1) (644 SE2d 127) (2007) (the State charged the defendant with violently shaking the victim and hitting the victim's head, and expert testimony showed that victim's death resulted from traumatic head injuries which were consistent with the allegations); *Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 23-24 (640 SE2d 620) (2006) (plaintiff introduced medical expert testimony to prove that defendant's negligent maintenance of her apartment caused her personal injuries); *Flowers v. Union Carbide Corp.*, 271 Ga. App. 438, 442 (3) (a) (610 SE2d 109) (2005) (defendant in a wrongful death case introduced the testimony of a medical expert to show that exposure to asbestos did not cause the decedent's death).

Accordingly, the trial court properly refused to dismiss the claim in its entirety after finding that the plaintiff had asserted a tortious termination of life support claim and that such claim was not a medical malpractice action requiring an expert medical affidavit under OCGA § 9-11-9.1.

2. DMC also argues that, even if this is a wrongful death claim that is not based upon medical malpractice, it was filed outside of the two-year statute of limitation and, therefore, should have been dismissed as untimely. DMC contends that the provision which tolls the statute of limitation for minor plaintiffs, OCGA § 9-3-90 (a), does not apply to wrongful death claims brought by a minor based upon the death of his or her parent. For the following reasons, we disagree.

(a) Since an action for wrongful death was created by statute and did not exist in common law, the Wrongful Death Act must be strictly

construed and not extended beyond its plain and explicit terms. *Miles v. Ashland Chem. Co.*, 261 Ga. 726, 728 (410 SE2d 290) (1991). "Accordingly, the language of the Act is to be given its plain and ordinary meaning." (Citation omitted.) *Carringer v. Rodgers*, 276 Ga. 359, 362 (I) (578 SE2d 841) (2003). So viewed, the Wrongful Death Act, OCGA § 51-4-1 et seq., does not contain a separate, internal statute of limitation that applies specifically to a wrongful death claim. Neither party disputes that, as a result, OCGA § 9-3-33,[3] the general two-year statute of limitation for personal injury claims, applies to wrongful death claims that do not arise from medical malpractice.

Further, it is undisputed that the wrongful death claim in this case accrued at the time of Hawkins' death, when Emmanuel Hawkins was two days old, and that, because Hawkins was unmarried and Emmanuel was her only child, Emmanuel alone possessed the right to file this wrongful death action. OCGA § 51-4-2 (a); see *Kitchens v. Brusman*, 280 Ga. App. 163, 164 (1) (633 SE2d 585) (2006) (a wrongful death claim accrues to the heirs at the time of the decedent's death). The issue, then, is whether the two-year statute of limitation is tolled while Emmanuel is a minor.

Under OCGA § 9-3-90 (a), "[m]inors . . . who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." Thus, OCGA § 9-3-90 (a) tolls the running of the OCGA § 9-3-33 statute of limitation when the plaintiff lacks the capacity to sue due to minority. See OCGA § 9-3-98 (Article 5 statute of limitation tolling provisions apply to tort and contract actions).

There is no language in the Wrongful Death Act which states that the statute of limitation should not be tolled due to the minority of the plaintiff.[4] Further, although there is no Georgia case which has specifically decided whether the minority tolling provision found in OCGA § 9-3-90 (a) applies to a wrongful death claim brought by a minor based upon the death of his parent, this Court has indicated in dicta that a minor asserting such a claim was entitled to tolling of the statute of limitation until he reached the age of majority. See *Williams v. Seaboard Air-Line Ry. Co.*, 33 Ga. App. 164, 165 (b) (125 SE

---

[3] Under OCGA § 9-3-33, "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues," except for actions for injuries to the reputation and for loss of consortium.

[4] See *Atlanta & West Point R. Co. v. Coleman*, 142 Ga. 94, 95 (82 SE 499) (1914) ("Where a statute limits the time for commencing actions given by it, unless such statute expressly excepts minors, or they are exempted by some general law from being barred, the limitation will apply to them.") (citations omitted); cf. OCGA §§ 9-3-71 (statute of limitation for medical malpractice actions); 9-3-73 (specifically limiting the time in which minors may initiate medical malpractice actions).

769) (1924) (suggesting that the statute of limitation may be tolled for minors who bring wrongful death suits in their own name for the death of a parent). In addition, a federal district court has specifically held that the minority tolling provision of OCGA § 9-3-90 (a) applied to a wrongful death claim brought by a minor for the death of his father. *Braun v. Soldier of Fortune Magazine*, 749 FSupp. 1083, 1086-1087 (b) (M.D. Ala. 1990). Accordingly, there is some persuasive authority which supports a finding that the wrongful death statute of limitation is tolled for minors under OCGA § 9-3-90 (a).

(b) DMC argues, however, that the minority tolling provision of OCGA § 9-3-90 (a) applies to personal injury claims, but not to wrongful death claims, even though the same statute of limitation, OCGA § 9-3-33, applies to both types of claims. DMC argues that it would be unjust to apply the minority tolling provision of OCGA § 9-3-90 (a) so that a child would have up to twenty years to file a wrongful death claim, as in this case, when the child was only two days old when his mother died. But this additional time allowance is no different than that allowed for a minor to bring other personal injury claims to which OCGA §§ 9-3-33 and 9-3-90 apply. This Court has repeatedly ruled that OCGA § 9-3-90 (a) tolled the statute of limitation for a minor's personal injury claim until the minor reached the age of majority. See, e.g., *Canas v. Al-Jabi*, 282 Ga. App. 764, 790-791 (2) (a) (639 SE2d 494) (2006) (plaintiff was an infant when he was infected with HIV through a blood transfusion; the statute of limitation was tolled on his failure to warn claim until he reached the age of majority); *Hart v. Appling County School Bd.*, 266 Ga. App. 300, n. 2 (597 SE2d 462) (2004) (physical precedent only) (eight-year-old plaintiff); *Mitchell v. Hamilton*, 228 Ga. App. 850, 852 (3) (493 SE2d 41) (1997) (twelve-year-old plaintiff); *City of Barnesville v. Powell*, 124 Ga. App. 132 (1) (183 SE2d 55) (1971) (four-year-old plaintiff). Further, as noted above, under OCGA § 9-3-98, the tolling provision of OCGA § 9-3-90 applies to "tort actions," with no distinction between personal injury claims and wrongful death claims.

Consequently, DMC has failed to demonstrate why OCGA § 9-3-90 (a) should be construed as tolling the statute of limitation for up to 20 years for a minor plaintiff to file a personal injury claim, but not a claim for the wrongful death of a parent.[5]

---

[5] Although the dissent contends that the language of *Miles v. Ashland Chem. Co.*, 261 Ga. 726, "address[ed] this precise issue," we disagree. In *Miles*, the Supreme Court of Georgia considered whether the discovery rule should extend the statute of limitation in a wrongful death case involving a continuing tort. Id. The Court concluded that to apply the discovery rule would "subject the defendants to potentially infinite liability and is counter to the policy underlying statutes of limitation." (Footnote omitted.) Id. at 728. In contrast to *Miles*, however, the instant case does not involve the discovery rule or a continuing tort. Further, applying the

(c) In addition, there are several other statutes which toll the running of the OCGA § 9-3-33 statute of limitation.[6] There is no language in any of these provisions which limits their application to certain types of claims, and, as noted above, OCGA § 9-3-98 specifically states that these general tolling provisions apply to "tort actions," without any qualifying language that would even suggest that wrongful death claims are excluded. Further, there is no statutory or case law which provides that some of these tolling provisions apply to wrongful death claims while others do not.

Although DMC argues that none of these general tolling provisions should *ever* be applied to wrongful death claims, this Court's wholesale adoption of this argument would mean that all plaintiffs in wrongful death suits would be precluded from bringing such claims outside of the two-year statute of limitation, including plaintiffs who are mentally incapacitated. See OCGA §§ 9-3-90 (a); 9-3-91. In addition, defendants (including murderers) would be able to avoid wrongful death suits by leaving the state or defrauding the plaintiff for at least two years and a day from the alleged tort. See OCGA §§ 9-3-94; 9-3-96; see also *Fulton County Administrator v. Sullivan*, 753 S2d 549, 552-553 (Fla. 1999) (a defendant's fraudulent concealment tolled the statute of limitation for a wrongful death action under OCGA § 9-3-96) (applying Georgia law). Moreover, plaintiffs would be forced to bring a wrongful death claim within two years, even if related criminal proceedings against the defendant were still pending. This outcome is inconsistent with the plain language of OCGA § 9-3-99, which tolls the statute of limitation for "any cause of action in tort" brought by the victim of a crime while the prosecution of the defendant is pending, for a period not to exceed six years.

Accordingly, based upon the plain language of the statutes at issue, the lack of an internal statute of limitation in the Wrongful Death Act, the lack of language limiting the application of the tolling provisions in the Wrongful Death Act, and the absence of any Georgia appellate court rulings to the contrary, we conclude that the minority tolling provision of OCGA § 9-3-90 (a) applies to a wrongful death

---

minority tolling provision to the statute of limitation does not impose potentially infinite liability upon defendants, because both the date of the decedent's death and the date the plaintiff reaches majority are readily ascertainable and definite. More importantly, *Miles* does not address the question presented here: how the plain language of the same statutes – OCGA §§ 9-3-33 and 9-3-90 (a) – could be applied to limit the time for filing a minor's claim for the wrongful death of a parent to two years, while allowing another child up to twenty years to file a claim for his or her own personal injuries?

[6] These provisions include OCGA §§ 9-3-91 (tolling due to disability suffered after the right of action has accrued); 9-3-94 (tolling due to defendant's absence from the state); 9-3-95 (tolling due to disability of one or more with joint right of action); 9-3-96 (tolling due to defendant's fraud which deters plaintiff from bringing an action); and 9-3-99 (tolling due to pending criminal prosecution of defendant).

action brought by a minor for the death of a parent when the action is not based upon medical malpractice. The trial court properly denied DMC's motion to dismiss the plaintiff's wrongful death action.

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., Phipps, Mikell and Adams, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

Because the majority has not strictly construed the Wrongful Death Act but has instead greatly expanded its scope, I respectfully dissent.

> Being in derogation of common law, the scope of the Wrongful Death Act must be limited in strict accordance with the statutory language used therein, and such language can never be extended beyond its plain and ordinary meaning. The express language of the Act will be followed literally and no exceptions to the requirements of the Act will be read into the statute by the courts.

(Punctuation and footnotes omitted.) *Tolbert v. Maner*, 271 Ga. 207, 208 (1) (518 SE2d 423) (1999).

This case is controlled by the reasoning and the holding in *Miles v. Ashland Chem. Co.*, 261 Ga. 726 (410 SE2d 290) (1991), a case not discussed by the majority. In *Miles*, the Supreme Court considered a certified question from the Eleventh Circuit Court of Appeals asking whether the running of the statute of limitation on a wrongful death claim was tolled until the plaintiff discovers or should have discovered that the defendant was at least in part responsible for the death of the decedent. Id. at 729 (Smith, P. J., dissenting).

In answering the question, the Court stated:

> The plaintiffs urge us to follow other jurisdictions which apply the discovery rule to wrongful death cases. These jurisdictions have either historically applied the discovery rule to wrongful death, or have broadly interpreted their wrongful death statutes. Georgia[,] however, has construed the wrongful death statute narrowly: As has Florida, in *Walker v. Beech Aircraft Corp.*, 320 S2d 418 (Fla. App. 1975) and Pennsylvania, in *Pastierik v. Duquesne Light Co.*, [514 Pa. 517] [(]526 A2d 323, 325[)] (Pa. 1987). We have consistently held since our statutes give a right of action not had at common law, they must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms. *Ford Motor Co. v. Carter*, 239 Ga. 657, 658 (238 SE2d 361) (1977); *Taylor v.*

*Murray*, [231 Ga. 852, 854 (204 SE2d 747) (1974)]. Under OCGA § 9-3-33, the defendants' liability extended two years from the date of death. To prolong the running of this period would be to subject the defendants to potentially infinite liability and is counter to the policy underlying statutes of limitation. We decline to extend the statute of limitation by adopting the discovery rule in wrongful death cases.

(Footnotes omitted.) *Miles*, supra at 728.

Likewise, under the majority's expansive reading of the Wrongful Death Act, a wrongful death claim belonging to a minor child, as here, could be brought up to two years after the "disability" is removed. In this case, that would be nearly 20 years after the death of Hawkins's mother.[7]

As pointed out in the trial court's order, there are some states with statutes similar to Georgia's that have allowed tolling of the statute for minors. Other states have adhered to strict construction, as discussed in *Miles*, supra, and refused to read into the Act a tolling provision for minors. See, e.g., *Bulley v. Toastmaster, Inc.*, 2003 WL 23021475 at *3 (5th Cir. Dec. 22, 2003) (per curiam) (no tolling of the wrongful death statute for minors as long as there is a responsible party who can bring the suit on the child's behalf); *Engle Bros., Inc. v. Superior Court of County of Pima*, 533 P2d 714, 717 (Ariz. App. 1975) (action brought on behalf of minor children did not toll the statute of limitation); *Moncor Trust Co. v. Feil*, 733 P2d 1327 (N.M. App. 1987) (tolling provision applicable to minors does not apply to minors who are beneficiaries under the Wrongful Death Act).

The majority cites to *Braun v. Soldier of Fortune Magazine*, 749 FSupp. 1083 (M.D. Ala. 1990) as "some persuasive authority" for its conclusion. In *Braun*, an Alabama federal district court was interpreting Georgia's wrongful death act. With no discussion and no citation to any authority, the court stated that, under Georgia law the statute of limitation for a wrongful death claim was "tolled as to minors." Id. at 1086. The *Braun* court also stated, again without any discussion or authority, that the statute of limitation for the wrongful death claim was tolled under Georgia's discovery rule. Id. at 1087. Thus, any persuasive authority *Braun* might have carried has been lost. See *Miles*, supra.

---

[7] The majority's comparison of the Wrongful Death Act to a personal injury claim, as in its statement that DMC has failed to demonstrate why OCGA § 9-3-90 (a) should be construed as tolling a statute of limitation for up to 20 years for a minor plaintiff to file a personal injury claim but not a wrongful death claim, ignores the language in *Miles* addressing this precise issue. See *Miles*, supra at 728.

Because the majority has cited to no authority in support of its expansive interpretation of the Act, and because the reasoning in *Miles* appears to require that we not extend the statute of limitation in wrongful death cases, I would reverse.

DECIDED NOVEMBER 29, 2007 —
RECONSIDERATION DENIED DECEMBER 13, 2007 —

*Hall, Booth, Smith & Slover, Timothy H. Bendin, Kristin L. Hiscutt,* for appellant.

*Vroon & Crongeyer, Bryan A. Vroon, John W. Crongeyer, Owen, Gleaton, Egan, Jones & Sweeney, Rolfe M. Martin,* for appellee.