WESTERN AND ATLANTIC RAILROAD COMPANY *v.*
MICHAEL; *et vice versa.*

Nos. 8727, 8765.  APRIL 14, 1932.  REHEARING DENIED JULY 16, 1932.

8

*Fitzgerald Hall, Walton Whitwell, Frank Slemons,* and *Mitchell & Mitchell,* for the railroad company.

*R. Carter Pittman* and *J. A. McFarland,* contra.

HINES, J. (After stating the foregoing facts.) A mother may recover for the homicide of a child, minor or sui juris, upon whom

she is dependent, or who contributes to her support, unless such child leave a wife, husband, or child. The mother is entitled to recover the full value of the life of the child. Civil Code (1910), § 4424. The word "homicide," as used in the section just cited, includes "all cases where the death of a human being results from crime, or criminal or other negligence." § 4425. The full value of the life of the child, as used in said section, "is the full value of the life of the deceased, without deduction for necessary or other personal expenses of the deceased had he lived." § 4425. Properly construed the action in this case was brought to recover damages for a homicide which did not result from a crime or from criminal negligence, but from other negligence. The language "other negligence," as used in section 4425 of the Civil Code, embraces a homicide resulting from any negligence other than criminal negligence, and includes a homicide resulting from simple or ordinary negligence. Properly construed, the petition in this case is one brought for the recovery of damages by the mother for the homicide of her minor child, caused by the simple or ordinary negligence of the servants of the railroad company.

Since pleadings are to be construed most strongly against the pleader, allegations that the servants of the company knew or ought to have known of certain facts, knowledge of which would make them guilty of willful or wanton negligence, are equivalent to a charge of implied notice rather than of actual knowledge. Wanton and willful negligence can not be drawn from such allegations. *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1020 (6) (48 S. E. 438); *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (2) (70 S. E. 792); *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459, 460 (79 S. E. 130); *Central of Georgia Ry. Co.* v. *Tapley,* 145 *Ga.* 792 (2) (89 S. E. 841). Where a number of persons habitually, with the knowledge and without the disapproval of the railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of this custom, are bound, on a given occasion, to anticipate that persons may be upon the track at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence. *Ashworth* v. *So. Ry. Co.,* 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592); *Bullard* v. *So. Ry. Co.,* 116 *Ga.* 644 (43

S. E. 39); *So. Ry. Co.* v. *Chatman,* 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675). In *Atlanta &c. Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (4), 390 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145), it was held: "Relatively to a person who, without license from the company, is walking upon a railway track upon a trestle, though such trestle be situated between a blow-post and a public crossing, the omission of the engineer to comply with the statutory requirements as to giving signals and checking the speed of the train is not negligence, inasmuch as these requirements raise no duty as between the company and strangers who may be upon the track elsewhere than at a public crossing." The ruling in the case just cited was based upon the decision in *Holmes* v. *Central R. Co.,* 37 *Ga.* 593, in which it was held that the blow-post act of January 22, 1852, which in substance is embraced in sections 2675, 2676, and 2677 of the Civil Code of 1910, "was intended for the protection of persons and property at public crossings of the road," and that the provisions of these sections of the code applied only where injury was done at public-road crossings. The ruling in *Atlanta &c. Ry. Co.* v. *Gravitt,* was followed by the majority of this court in *East Tenn., Va. & Ga. Ry. Co.* v. *Smith,* 94 *Ga.* 580 (20 S. E. 127). The Court of Appeals has likewise held that the failure to observe the requirements of our former blow-post law, embraced in the sections of the Civil Code to which reference is made above, was not negligence as to a person on the track of the railroad who was not at a public crossing. *Georgia R. &c. Co.* v. *Williams,* 3 *Ga. App.* 272 (59 S. E. 846). The above sections of the Civil Code, embracing the former blow-post law, were repealed by the act of August 19, 1918 (Acts 1918, p. 212; 8 Park's Code, § 2677(b)), which requires that upon the line of each railway in this State, at a point 400 yards from the center of its intersection at a grade with any public road or street used by the public generally in crossing the tracks of such railway and on each side of said crossing, there shall be erected by the railway company a blow-post to indicate the direction of such crossing, and the engineer operating the locomotive engine of a railroad-train moving over the track of said railway shall, when he reaches said blow-post, as a signal of approach to said crossing, blow his whistle two long and two short blasts at intervals of five seconds between them, said blasts to be loud and distinct. In addition the engineer is required, after reaching the

blow-post and while approaching said crossing, to keep and maintain a constant and vigilant outlook along the track ahead of his engine, and otherwise exercise due care in approaching such crossing, in order to avoid doing injury to any person or property which may be on such crossing, or upon the line of said railway at a point within 50 feet of such crossing. In *A. C. L. R. Co.* v. *Fulford,* 159 *Ga.* 812 (127 S. E. 274), this court held that the failure of the engineer to give the signals required by the blow-post law of August 18, 1918, would be negligence as to any person on a public-road crossing over a railroad, and as to any person within 50 feet of the crossing; but would not be negligence as to a trespasser upon the railroad-track who was more than 50 feet from the crossing. Mere failure to comply with this blow-post statute and nothing more would constitute only ordinary or simple negligence.

Applying the principles above announced, the petition should be construed as making a case for damages for homicide resulting from simple or ordinary negligence. So construing the petition, the controlling question for our decision is whether the above sections of the code under which this action is brought are unconstitutional because they violate the due-process and equal-protection clauses of the fourteenth amendment to the constitution of the United States. The contention of counsel for the railway company is that these sections violate the constitutional clauses referred to, for the reasons that "(a) they subject a tort-feasor, guilty of simple negligence alone, to the payment of more than compensatory damages; (b) they impose a penalty over and above full compensation on a tort-feasor guilty of no wanton or willful misconduct, violating no statute or ordinance, committing no act malum in se, when the deceased bore no legal relationship to the tort-feasor, and the penalty can not possibly prevent or tend to prevent similar accidents; (c) they invade an exclusively judicial function; (d) they undertake to set up, on no proper basis of classification, different measures of recovery under identical conditions;" and "(e) they permit the mother of a minor (who had no legal relationship with defendant) to recover of a tort-feasor more than full compensation,—that is, *more than she has lost,*—when no statute, ordinance, or rule of public policy has been violated, no wanton or malicious act committed, nothing malum in se done, and when such excess amount of recovery can have no bearing on the possibility of future similar accidents

and meets no social needs." These contentions are without merit. The statutes of this State, embodied in the above sections of our Civil Code, create a new cause of action and new rights and duties for the prevention of criminal and negligent homicides and to meet social and economic needs. The aim of these statutes is to strike at the evil of the negligent destruction of human life, by imposing liability upon those who are responsible either directly through themselves or indirectly through their employees for homicides. It is not beyond the power of the legislature to attempt to preserve human life by making homicide expensive. It may impose an extraordinary liability, such as these statutes do, not only upon those at fault, but upon those who, although not directly culpable, are able nevertheless in the management of their affairs to guard substantially against the evil to be prevented. *So. Ry Co.* v. *Decker,* 5 *Ga. App.* 21, 30 (62 S. E. 678) ; St. Louis &c. Railroad v. Taylor, 210 U. S. 281 (28 Sup. Ct. 62, 52 L. ed. 1061) ; Texas & Pac. Ry. v. Rigsby, 241 U. S. 33 (36 Sup. Ct. 482, 60 L. ed. 874) ; Wilmington Star Mining Co. v. Fulton, 205 U. S. 60 (27 Sup. Ct. 412, 51 L. ed. 708) ; Pizitz Co. v. Yeldell, 274 U. S. 112 (47 Sup. Ct. 509). These statutes of this State adopted and extended Lord Campbell's act and its successors, and establish liability for wrongful death, where none existed before; they are familiar examples of the legislative creation of new rights and duties for the prevention of homicides or, for satisfying social and economic needs; and their constitutionality can not be successfully challenged. Pizitz v. Yeldell, supra. The State does not exhaust its power to compel redress for a wrongful death by providing for recovery of the loss sustained by the dependents of the decedent. It may go further and exact penalties in addition. Staten Island Rapid Transit Ry. Co. v. Phœnix Indemnity Co., 281 U. S. 98 (2) (50 Sup. Ct. 242).

These sections of our Civil Code do not violate the equality clause of the fourteenth amendment to the constitution of the United States, because in no action ex delicto in this State, save when predicated on said two statutes here under attack, can a plaintiff recover in a case bottomed on simple negligence more than actual compensation, thus discriminating unjustly against defendants in homicide cases. In the exercise of the police power the State can make reasonable classifications; and such classifications do not offend the equality clause of the fourteenth amendment. In the exer-

cise of this broad power the legislature can create a measure of damages for homicides resulting from ordinary or simple negligence, as well as for homicides resulting from wanton, willful, or criminal negligence. This fact does not render the statute embodied in section 4425 of our Civil Code unconstitutional upon the ground that it denies to defendants the equal protection of the law. It puts all persons who commit homicides arising from criminal or other negligence upon the same footing, and subjects them all to the same measure of damages. It imposes a penalty upon the person who causes the death of another by negligence, the penalty to go to the person who is authorized to sue for the negligent homicide. It is penal in that the measure of the recovery is the full value of the life of the deceased, irrespective of its real value to the person in whom the cause of action is vested. *Savannah Electric Co.* v. *Bell,* 124 *Ga.* 663 (53 S. E. 109) ; *Atlantic, Valdosta &c. R. Co.* v. *Mc-Dilda,* 125 *Ga.* 468 (54 S. E. 140, 114 Am. St. R. 240) ; *Engle* v. *Finch,* 165 *Ga.* 131, 134 (139 S. E. 868). The equality demanded by the fourteenth amendment is not violated by embracing homicides arising from ordinary or simple negligence with those arising from wanton, willful, or criminal negligence. Such a classification is not arbitrary, although a homicide arising from willful, wanton, or criminal negligence might be put in a classification by itself, and subjected to heavier penalties than a homicide arising from ordinary or simple negligence. In making its classification the legislature is not required to make a distinction arising from different degrees of negligence; but it can embrace all wrongful homicides under one classification, and subject them to the same penalties. The imposition of the penalty would tend to prevent the commission of homicides arising from negligence of either class.

Furthermore, these statutes do not constitute an invasion by the legislative branch of the government of the powers of the judicial branch thereof; and for this reason they do not violate the due-process clause of the fourteenth amendment to the constitution of the United States. Legislative provision imposing a penalty does not invade judicial functions.

So we are of the opinion that the controlling question in this case, that is, whether our homicide statutes violate the due-process and equality clauses of the fourteenth amendment, is fully controlled by the opinions of the Supreme Court of the United States to which

we have referred; and that the judge did not err in overruling the motion to dismiss the petition of the mother in this case.

*Judgment affirmed on main bill of exceptions; cross-bill of exceptions dismissed. All the Justices concur.*