32291. FORD MOTOR COMPANY v. CARTER et al.

Bowles, Justice.

We granted certiorari in *Ford Motor Co. v. Carter,* 141 Ga. App. 371 (233 SE2d 444), to review the ruling in Division 2 regarding the question of whether or not a plaintiff wife and administratrix may recover for the wrongful death of her husband upon a strict liability theory.

Although most causes of action ex contractu survived at common law, those ex delicto ceased with the death of either party. Hilkey, Actions for Wrongful Death, 9 Ga. Bar Journal 261 (1947); 3 Holdsworth, History of English Law, pp. 451-452, 579, 585 (3d Ed., 1922); 3 Blackstone Commentaries 301; *Shields v. Yonge,* 15 Ga. 349 (1854); *Ga. R. & Bkg. Co. v. Wynn,* 42 Ga. 331 (1871); *Watson v. Thompson,* 185 Ga. 402, 406 (195 SE 190) (1938); *Thompson v. Watson,* 186 Ga. 396 (197 SE 774) (1938).

We are concerned here only where one is charged with the wrongful death of another. Georgia's Wrongful Death Statutes now of force have sought to modify the common law rule, and their origin and development have been outlined in prior decisions of this court. See *Thompson v. Watson,* supra.

The two Georgia Code sections pertinent to a decision in this case follow. Code Ann. § 105-1301 provides, "[T]he word 'homicide' as used in this Chapter shall include all cases where the death of a human being results from a crime, or from criminal or other negligence" (Ga. L. 1887, p. 45); and, Code Ann. § 105-1302 provides, "[A] widow, or, if no widow a child or children, minor or sui juris, may

recover for the homicide of the husband or parent, the full value of the life of the decedent as shown by the evidence." (Ga. L. 1850, Cobb 476; Ga. L. 1855-6, p. 155; Ga. L. 1878-9, p. 59; Ga. L. 1924, p. 60). We have consistently held since our statutes give a right of action not had at common law, they must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms. *Thompson v. Watson,* 186 Ga. 396, 405, supra (Russell and Jenkins, JJ., dissenting); *Lovett v. Garvin,* 232 Ga. 747 (208 SE2d 838) (1974); *Ellis v. Rich's, Inc.,* 233 Ga. 573 (212 SE2d 373) (1975); *Lovett v. Emory University,* 116 Ga. App. 277 (156 SE2d 923) (1967). In construing a statute we must appreciate that what may seem to be a harsh result by using one interpretation may be a just result by using the other. We are concerned here only with the right of the wife to sue for the wrongful death of her husband under the theory of strict liability, if permitted by statute. If the wife's complaint were based solely on the negligence of the defendant, and she was not otherwise precluded, the above quoted Code sections would permit her to proceed to a jury on that theory. But here, she has affirmatively pled that the motor vehicle involved was manufactured new, by defendant Ford Motor Company, owned by co-defendant Hewlitt, and placed in the stream of commerce by Ford. She pleads further that the vehicle was not merchantable and reasonably suited for the use intended by reason of a defect existing therein at that time, and this condition proximately caused the death of her husband. She alleges that Ford is liable in damages "by reason of operation of Georgia Code Ann. § 105-106." She also pleads that Ford is liable to her by reason of "negligence" under the same facts pleaded and under the authority of the same Code § 105-106.

The defendant filed a written motion to strike those two particular paragraphs from the complaint. The trial court denied defendant's motion and on appeal the Court of Appeals affirmed. We cannot agree with the conclusion reached and must reverse.

Although several states have done so, the courts of Georgia have not adopted a general rule of strict liability. *Stovall & Co. v. Tate,* 124 Ga. App. 605 (184 SE2d 834)

(1971) (cert. den.); *Poppell v. Waters,* 126 Ga. App. 385 (190 SE2d 815) (1972) (cert. den.); Whitaker v. Harvell-Kilgore Corp., 418 F2d 1010 (5th Cir. 1969).

Our courts have also declined to permit an action for wrongful death based on a breach of warranty for the sale of goods, except specified articles intended for human consumption or use. *Lovett v. Emory University,* supra; Horne v. Armstrong Products Corp., 416 F2d 1329 (5th Cir. 1969). Our legislature, however, has, to a limited extent, passed laws permitting certain causes of action or imposing certain responsibilities which have attributes of strict liability. Workmen's Compensation Act, Code Ann. § 114-101 et seq. as amended; Code Ann. § 105-106 (Ga. L. 1968, pp. 1166, 1167).

The provisions of Code Ann. § 105-106 create a new cause of action which is also in derogation of the common law and should be strictly construed. See *Tomlinson v. Sadler,* 99 Ga. App. 482 (109 SE2d 84) (1958); *Foster v. Lankford,* 120 Ga. App. 573 (171 SE2d 662) (1969); *Ellis v. Rich's, Inc.,* supra. As far as the issue on appeal in this case is concerned, if plaintiff can recover for wrongful death against the defendant she must do so under the provisions of Code Ann. §§ 105-1301 thru 105-1302. Upon the same premise she must recover on some theory of negligence as no crime or criminal negligence is involved in her case.

This leads us to the question of whether or not the strict liability imposed under Code Ann. § 105-106 embraces negligence. The decision appealed from holds, "if the manufacturer's product is defective, it amounts to negligence per se or as a matter of law." Thus, that decision concludes that negligence is involved in the case and that an action for wrongful death may be maintained under the responsibility imposed under this strict liability statute.[1]

---

[1] The second point urged by appellant is that Code Ann. § 105-106 does not permit a wife to bring an action for her husband's death as she is not a "natural person" within the meaning of the statute, and that actions for death are not included in the statute. This was not discussed in the opinion of the Court of Appeals.

We cannot agree to the result reached. We said in *Center Chemical Co. v. Parzini,* 234 Ga. 868 (218 SE2d 580) (1975), that a claimant (proceeding under the Act) is not required to prove negligence. The Court of Appeals recognized this holding, but then proceeded to hold that a violation of Code Ann. § 105-106 is negligence as a matter of law.

We hold that the strict liability imposed under § 105-106 is not based on negligence. While negligence on the part of the manufacturer may happen to be involved as a matter of fact, in a given situation, it is not necessarily so, and the statute imposes liability irrespective of negligence. As we said in *Ellis v. Rich's, Inc.,* supra, "[E]ssentially the doctrine of strict liability eliminates questions of negligence in tort actions and the Uniform Commercial Code defenses, including privity, in contract actions for breach of warranty. See Restatement of the Law, Torts 2d, § 402A."

While the Code section itself does not conform to any model language used to describe "strict liability in tort" it does impose on manufacturers similar liability. 46 ALR3d 240 (1972) (See footnotes 2 & 3). The intention of the

---

[2] For a treatise on development of strict liability see Gregory, Trespass to Negligence to Absolute Liability, 37 Va. L. Rev. 359 (1951).

[3] To illustrate differences in the rights declared by a statute imposing strict liability and rights appertaining under theories of negligence, the following may be observed: (1) The defect may have arisen from causes other than negligence of the manufacturer, such as negligence of another manufacturer of a component part, the defects of which could not be revealed by inspection. (2) The defect may have arisen from unknown causes i. e., an act of God occurring before the sale and cannot be classified as negligence on the part of the manufacturer. (3) An inference of negligence cannot be dispelled by the affirmative showing of proper care, even where clear, positive and uncontradicted. (4) The plaintiff does not have to prove negligence. (5) The plaintiff does not have to be an affected party under the limitations of Code Ann. UCC § 109A-2—318. (6) Privity to the contract of

legislature in adopting any Act must be obtained from a consideration of the Act as a whole. *Williams v. Bear's Den, Inc.,* 214 Ga. 240, 242 (104 SE2d 230) (1958); *Underwood v. Atlanta & W. P. R. Co.,* 105 Ga. App. 340, 347 (124 SE2d 758) (1962). Where there is apparent conflict between different sections of the same statute, the duty of a court is to reconcile them if possible, so as to make them consistent and harmonious with one another. *Cason v. Harn,* 161 Ga. 366 (131 SE 88) (1925). If they cannot be reconciled the one which best conforms to legislative intent must stand. *Williams v. Bear's Den, Inc.,* supra. Code § 105-106 places liability in part on a manufacturer for goods sold when not merchantable and reasonably suited for the use intended, and eliminates the manufacturer's right to limit the operation of the Act. Responsibilities usually associated with contract law are thus included. The result is somewhat hybrid. Clearly, there is no standard of conduct set, nor any actual prohibition imposed in the Code section. See *Teague v. Keith,* 214 Ga. 853, 854 (108 SE2d 489) (1959).

To say that the strict liability is placed on the manufacturer, that section 105-106 is bottomed upon a theory of negligence, or that when the manufacturer's product is proven defective at the time of sale it amounts to negligence per se, would not be a correct pronouncement of the law in our opinion. If negligence or lack of negligence is not involved, there is really no need

---

purchase is not a prerequisite to sue for damages. (7) A manufacturer may prudently produce a pair of shoes suitable for walking upon ordinary ground, and yet when sold for mountain climbing are deemed unsuited for the purpose intended and thus defective. (We note this may not be an applicable illustration under literal language of Code Ann. § 105-106). (8) Merchantable has a broad definition in Code Ann. § 109A-2—314 (a). (9) If liability were also imposed on a dealer or a vendor under the statute, the question would be clearer. (10) Contributory negligence on the part of the injured party is generally not available as a defense in strict liability actions according to the weight of authority in this country.

to consider whether or not a violation of the Code section would be negligence per se.

The absolute liability of a common carrier for goods entrusted for shipment did not include negligence as a matter of evidence or pleading. *Southern R. Co. v. Standard Growers Exchange,* 34 Ga. App. 534 (130 SE 373) (1925). As was said in *L. & N. R. Co. v. Warfield,* 129 Ga. 473, 477 (59 SE 234) (1907), "Where the law imposes an absolute duty, the failure to perform that duty to the damage of another raises a liability; and it would be superfluous to inquire into the causes that interfered with the discharge of the duty, when such causes would not relieve from liability."

Under the decisions of this state, the conduct of a party cannot be declared to be negligence per se unless it has been so declared by a lawmaking body. *Garrett v. Royal Brothers Co.,* 225 Ga. 533 (170 SE2d 294) (1969); *Central R. & Bkg. Co. v. Smith,* 78 Ga. 694 (1) (3 SE 397) (1887); *Wright v. Ga. R. & Bkg. Co.,* 34 Ga. 330, 338 (1866); *Barrett v. Mayor &c. of Savannah,* 13 Ga. App. 86 (2) (78 SE 827) (1913).

The statute when considered in the light of the facts in the instant case, imposes a strict liability on the manufacturer. The liability may be incurred irrespective of negligence, privity of contract, warranties, or exclusions. The usual defenses pertaining to negligence of a defendant may not be invoked.

Negligence has no precise legal meaning. Among the best has been declared to be "the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury." 65 CJS 433, Negligence, § 1 (2) (1966). Comparing such a definition to the statute under consideration and our holding in *Center Chemical Co. v. Parzini,* supra, a manufacturer can still be held liable irrespective of how carefully he observes; or any degree of care, precaution or vigilance he observes, in trying to protect the interest of another. The statute imposes strict liability for a defective new product and nothing less.

We conclude that neither negligence as a matter of fact or per se is involved in a cause of action brought under

Code Ann. § 105-106, whether brought separately or in conjunction with Code Ann. §§ 105-1301, 105-1302. With that, plaintiff's action for wrongful death based on such a premise cannot stand. See Higginbotham v. Ford Motor Company, 540 F2d 762 (5th Cir. 1976).

In considering the problems of this case, we fully recognize the modern tendency toward strict liability in products cases and the reasons that have been urged to place the responsibility on the manufacturer or vendor for product defects. In Georgia, the legislature again moved into this area with the enactment of Ga. L. 1968, pp. 1166-1167. The legislature was cognizant of the existing statutes, case law and interpretations laid down by our courts. For reasons the legislature considered sufficient, they chose to limit the strict liability imposed to manufacturers of new products only; the right of recovery was granted only to "any natural person," and was limited to injuries to his person or property. Nowhere was negligence, wrongful death or survivors mentioned. We do not feel that this court can, by judicial opinion, enlarge upon or by construction grant rights or causes of action not clearly included in the statute itself. This leaves us with the result that, on strict liability as to a manufactured motor vehicle with a defect, there is a cause of action for a scratch inflicted on a person but no cause of action for his death. On the other hand, under the statute, a manufacturer could possibly be held responsible in 1977 for a defect in a motor vehicle manufactured in 1930. Both seem equally illogical. However, these problems address themselves to the legislature and not to the courts.

*Judgment reversed. All the Justices concur, except Nichols, C. J., who concurs in the judgment only, and Undercofler, P. J., and Hill, J., who dissent. Marshall, J., is disqualified.*

ARGUED JUNE 15, 1977 — DECIDED SEPTEMBER 7, 1977 —
REHEARING DENIED SEPTEMBER 27, 1977.

*Long, Weinberg, Ansley & Wheeler, John H. Stanford, Jr., Ben L. Weinberg, Jr., Fendig, Dickey, Fendig & Whelchel, Albert Fendig, Jr.,* for appellant.

*Hutto, Palmatary, Boshears & Magda, J. S. Hutto, Charles H. Hyatt, Kopp, Peavy & Connor, J. Edwin Peavy, Frank M. Eldridge,* for appellee.

HILL, Justice, dissenting.

We have forgotten our history and renounced our inheritance. Considering only the common law personal actions, the actions of debt and detinue are among the oldest, having existed in the 12th century. The action of covenant has existed since the 13th century. Ejectment arose in the 14th. Assumpsit in the 15th. These causes of action were created by courts, the common law courts. And there was always the court of equity to provide relief where there was no adequate remedy at law.

At some point the courts reversed themselves. Or, perhaps it was that death was inevitable. In any event, at various times the courts have said that actions do not survive the death of either party, personal actions do not survive the death of the plaintiff, actions do not survive the death of the defendant unless the defendant benefited from the wrong, causes of action do not survive death, and there is no cause of action for wrongful death. Every one of these court rulings the legislatures have overturned. This court is doing it again. We are declaring our inability to provide solutions to today's problems. We are forgetting our history and renouncing our inheritance. I dissent.

Should a manufacturer which produces a defective product which causes the death of a human being be immune to liability? No. We should follow the example of our predecessors and fill the void in the Act (Ga. L. 1968, pp. 1166, 1167) by holding that the manufacturer of personal property sold, directly or indirectly, as new property, shall be liable irrespective of privity to any person killed by its use or consumption because when sold by the manufacturer it was not merchantable and reasonably suited to the use intended. After all, it was a court which recognized the doctrine of strict liability in tort in the first place. Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal. Rptr. 697 (377 P2d 897, 13 ALR3d 1049) (1963).

I am authorized to state that Presiding Justice

Undercofler joins in this dissent.