S91Q0739. MILES et al. v. ASHLAND CHEMICAL COMPANY et al.
(410 SE2d 290)

HUNT, Justice.

In this certified question from the Eleventh Circuit Court of Appeals, we are asked: "Do the Georgia courts follow the discovery rule in applying the statute of limitations to a wrongful death action alleging a failure to warn?"

The facts are set out by the Eleventh Circuit:

The plaintiffs in these cases are relatives of three decedents, Carol Williams, Harmon M. Gaines, and John T. McKenna.

The decedents were all employed by Great Dane Trailers, Inc. Each of the decedents died from cancer. Carol Williams died from renal cell carcinoma in April, 1984; Harmon Gaines died from carcinoma of the colon in August, 1979; and John McKenna died from adenolymphoma in October, 1984. The defendants, Ashland Chemical Company and Swift Adhesive, Inc., are manufacturers of Fome Bond, a product containing Methylene Chloride that is used by Great Dane Trailers, Inc.

The plaintiffs contend that it was not until September 3, 1987, that they first learned of the relationship between exposure to Methylene Chloride and cancer. On May 26, 1989, each plaintiff filed a wrongful death action against one or both of the defendants in the Superior Court of Chatham County, Georgia. The plaintiffs allege that defendants failed to provide adequate warnings of the dangers of exposure to Methylene Chloride. The defendants removed these cases from state court to the district court for the Southern District of Georgia. Thereafter the defendants moved the court for judgment on the pleadings, contending that the plaintiffs' actions were barred by Georgia's two-year statute of limitations for wrongful death claims. The district court granted the defendant's motion, ruling that the two-year statute of limitations began to run on the date of death.

The applicable statute of limitation, OCGA § 9-3-33, provides "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues. . . ." *Taylor v. Murray*, 231 Ga. 852, 854 (204 SE2d 747) (1974). In the case before us, the plaintiffs seek to extend the commencement of the statute of limitation for wrongful death to September 3, 1987, when they discovered the cause of death, even though this was over two years after the decedents died.

Under the "discovery rule," the right of action does not "accrue" until the injured person discovers the cause of his or her injury. *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (194 SE2d 425) (1972). Similarly, the failure to warn of a hazard capable of producing an injury due to continued exposure constitutes a continuing tort, which "accrues" when the failure to warn is discovered by the injured plaintiff. Id. If the cause of the injuries in the cases before us had been discovered during their lifetimes, the decedents would have had personal causes of action in continuing tort, and the benefit of the discovery rule. *King v. Seitzingers, Inc.*, 160 Ga. App. 318 (287 SE2d 252) (1981). However, an action for wrongful death "accrues" to the heirs at

death,[1] not at the time the cause of the injury is discovered.[2] *Lovett v. Garvin*, 232 Ga. 747, 748 (208 SE2d 838) (1974); *Burns v. Brickle*, 106 Ga. App. 150, 153 (126 SE2d 633) (1962).

The plaintiffs urge us to follow other jurisdictions which apply the discovery rule to wrongful death cases. E.g., *Frederick v. Calbio Pharmaceuticals*, 89 CalApp.3d 49, 152 Cal. Rptr. 292 (2nd District 1979); *Gosnell v. Ashland Chemical, Inc.*, 674 SW2d 737 (Tenn. Ct. App. 1984). These jurisdictions have either historically applied the discovery rule to wrongful death, or have broadly interpreted their wrongful death statutes. Georgia however, has construed the wrongful death statute narrowly:[3]

> We have consistently held since our statutes give a right of action not had at common law, they must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms.

*Ford Motor Co. v. Carter*, 239 Ga. 657, 658 (238 SE2d 361) (1977); *Taylor v. Murray*, supra, 231 Ga. at 854.

Under OCGA § 9-3-33, the defendants' liability extended two years from the date of death.[4] To prolong the running of this period would be to subject the defendants to potentially infinite liability and is counter to the policy underlying statutes of limitation.[5] We decline to extend the statute of limitation by adopting the discovery rule in wrongful death cases.

The answer to the certified question is no.

*Certified question answered in the negative. All the Justices concur, except Smith, P. J., and Benham, J., who dissent.*

---

[1] "[I]t has none of the attributes of a mere survival of the cause of action had by the deceased, but has only those of a new and distinct right or cause of action, based merely upon the same tort which gave cause to the right of action in the deceased." *Thompson v. Watson*, 186 Ga. 396, 405 (197 SE 774) (1938). We thus reject amici's argument that medical malpractice, wrongful death and continuing tort cases must be treated alike.

[2] Thus, the cause of action for wrongful death might still be viable where the personal injury action may have already lapsed. *Burns v. Brickle*, 106 Ga. App. 150, 153 (126 SE2d 633) (1962).

[3] As has Florida, in *Walker v. Beech Aircraft Corp.*, 320 S2d 418 (Fla. App. 1975) and Pennsylvania, in *Pastierik v. Duquesne Light Co.*, 526 A2d 323, 325 (Pa. 1987).

[4] As was said in *Pastierik v. Duquesne Light Co.*, 526 A2d 323, 326 (Pa. 1987): survivors . . . have the opportunity to proceed with scientific examinations aimed at determining the exact cause of death so that a wrongful death action, if warranted, can be filed without additional delay.

[5] It is utterly repugnant to the genius of our laws for a person to be forever liable for a wrong done, whether that wrong arises out of contract or out of tort. . . .
"In a country where not even treason can be prosecuted after a lapse of three years, it can scarcely be supposed that an individual would remain forever liable to a pecuniary forfeiture." *Atlantic, Valdosta & Western R. Co. v. McDilda*, 125 Ga. 468 (54 SE 140) (1906), quoting *Adams v. Woods*, 5 U. S. 194 (2 Cranch) (1804).

SMITH, Presiding Justice, dissenting.

The Eleventh Circuit Court of Appeals certified the following question to this Court in *Miles v. Ashland Chemical Co.*, 924 F2d 1026, 1028 (11th Cir. 1991):

> Is the running of the Georgia two-year statute of limitations for a wrongful death action, based upon an alleged failure to warn, tolled until the plaintiff discovers, or with reasonable diligence should have discovered, that the defendant was at least in part responsible for the death of the decedent? Put another way, do the Georgia courts follow the discovery rule in applying the statute of limitations to a wrongful death action alleging a failure to warn?

I would answer this question in the affirmative for the following reasons:

### *History of the Wrongful Death Statute*

At common law, there was no wrongful death action, but with the emergence of the Industrial Revolution the previously non-mechanized society began to work with machines that maimed and killed. The newly invented steam engines and boilers would often explode causing injury; medical science was still in its infancy and injuries became deaths. The British Parliament enacted legislation in an effort to provide a remedy; among the new remedies was, Lord Campbell's Act, a homicide act that permitted the decedent's cause of action to survive in the legal representative. The 1846 homicide act was the first wrongful death cause of action. Within four years, the Georgia General Assembly enacted its first wrongful death action. Eldridge's Ga. Wrongful Death Action, Ch. 1.

The wrongful death statutes, as they have evolved today, allow certain individuals to "recover for the homicide" of other individuals. "Homicide" as defined in OCGA § 51-4-1 (2)

> . . . includes all cases in which the death of a human being results from a crime, from criminal or other negligence, or from property which has been defectively manufactured, whether or not as result of negligence.

The individuals who may recover include: a surviving spouse, or if no surviving spouse a child or children may recover for the homicide of a parent, OCGA § 51-4-2 (a) (b); a parent may recover for the homicide of a child, OCGA § 51-4-4; if no person is entitled to bring an action pursuant to OCGA §§ 51-4-2 or 51-4-4, then the personal representative may recover for the homicide, OCGA § 51-4-5 (a). Ad-

ams and Adams state that OCGA § 51-4-5 (a) "is the 'fail-safe' provision which ensures that some party will always be available to prosecute a wrongful death action, even in the absence of any of the statutory plaintiffs. . . ." Georgia Law of Torts, § 31-6.

## The Statute of Limitation

The applicable statute of limitation, a general statute of limitation that applies to personal injuries provides, in pertinent part: "Actions for injuries to the person shall be brought within two years after the right of action accrues. . . ." OCGA § 9-3-33. Similar accrual language caused division on this Court in *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461 (330 SE2d 344) (1985). The problem arose when the discovery rule was extended to an action involving mere property damage based upon accrual language in OCGA § 9-3-30. Three years later this Court expressly overruled *Lumbermen's*. *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (368 SE2d 732) (1988). This Court decided that a wholesale use of the discovery rule each time we encountered a statute with the term "accrued" was unwarranted. We held that the discovery rule should be confined to cases in which "bodily injury" develops over an extended period of time. Id. Implicit in our decision was our recognition that greater protection is required in cases involving death and personal injury than in cases involving mere property damage. See also *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 123 (365 SE2d 827) (1988).

## Legislative Intent

The choice of the word "accrues" and the absence of a statutory definition of the word indicate the General Assembly's intent to allow the courts substantial flexibility in determining when a limitation statute begins.[6] When granted this flexibility we are required to construe the word "accrues" to achieve the goals of the particular statute under scrutiny so that our construction comports with the legislative intent.

As this Court stated in *Thompson v. Watson*, 186 Ga. 396, 404 (197 SE 774) (1938), the wrongful death statutes create a new cause of action in favor of the survivors,

---

[6] Compare OCGA § 9-3-71 (a) which fails to grant such flexibility to the courts. "[A]n action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." Compare OCGA § 9-3-29 in which the General Assembly defined when a cause of action "accrues." The statute provides in pertinent part: "For the purpose of this Code section, the right of action shall accrue immediately upon the violation of the covenant. . . ." Id.

the gist of the action is not the injury suffered by the deceased, but the injury suffered by the beneficiaries, resulting from the death of the deceased. . . . The cause of action, while dependent upon the fact of an actionable tort against the deceased, accrues only by reason of the death.

In *Thompson*, supra, and every other case that has followed, the tortfeasor and the cause of death were known. Today for the first time this Court is asked to consider when the statute of limitation begins to run in cases in which the plaintiffs did not know that the defendant may have been in part responsible for the decedent's death until more than two years after the death.

### Rules of Construction

Statutes in derogation of the common law and especially those that are penal in nature, such as our wrongful death statutes, "must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." Id. at 406. We are always required to begin our inquiry by looking "diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). At common law there was no remedy for a wrongful death until Lord Campbell's Act was passed. This Court in *Thompson*, id. at 406 stated:

Lord Campbell, the author of the first death statute of England from which our present statute evolved, said that his act was passed for the purpose of "giving a compensation by action to the families of those killed by the negligence of others." 12 Camp. Lives. Ld. Ch. 265. (Emphasis omitted.)

The purposes of the wrongful death statutes were discussed in *Western &c. R. Co. v. Michael*, 175 Ga. 1, 13 (165 SE 37) (1932) where this Court stated:

The statutes of this State, embodied in the above sections of our Civil Code, create a new cause of action and new rights and duties for the prevention of criminal and negligent homicides and to meet social and economic needs. The aim of these statutes is to strike at the evil of the negligent destruction of human life, by imposing liability upon those who are responsible either directly through themselves or indirectly through their employees for homicides. It is not beyond the power of the legislature to attempt to preserve human life by making homicide expensive. It may impose an

extraordinary liability, such as these statutes do, not only upon those at fault, but upon those who, although not directly culpable, are able nevertheless in the management of their affairs to guard substantially against the evil to be prevented. [Cits.] These statutes of this State adopted and extended Lord Campbell's act and its successors, and establish liability for wrongful death, where none existed before; they are familiar examples of the legislative creating of new rights and duties for the prevention of homicides or for satisfying social and economic needs. . . .

Two important purposes are stated above: (1) The prevention of criminal and negligent homicides by striking at the evil of the negligent destruction of human life; and (2) The maintenance of social and economic needs. Id. The goals of the statutes are both accomplished "by making homicide expensive." Id. The person who causes the wrongful death of another is to be punished with a monetary fine and the survivors are to be compensated. The General Assembly's willingness to punish those who cause the wrongful death of another is illustrated by OCGA § 51-4-5 (a) which allows the personal representative to bring an action when there is no surviving family member to bring the action. Infra at 2.

### The Criminal Law

The wrongful death statutes are the civil law equivalent of the criminal law; thus, the criminal law statutes of limitation are illuminating. "A prosecution for murder may be commenced at any time." OCGA § 17-3-1 (a). "Prosecution for other crimes punishable by death or life imprisonment must be commenced within seven years after the commission of the crime." OCGA § 17-3-1 (b). "The period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which . . . [t]he person committing the crime is unknown or the crime is unknown. . . ." OCGA § 17-3-2 (2). One of the objectives of criminal law is punishment; one of the objectives of the wrongful death statutes is punishment. There can be no punishment when the actor and acts are unknown.

### Conclusion

The majority opinion causes the wrongful death statutes to become a "delusive remedy" for those who cannot detect a causal link between the decedent's death and the tortfeasors acts within two years of the decedent's death. See *Urie v. Thompson*, 337 U. S. 163 (69 SC 1018, 93 LE 1282) (1949). "We do not think the humane legis-

lative plan intended such consequences to attach to blameless ignorance." Id. at 170.

The legislature granted us the flexibility to punish wrongdoers and meet social and economic needs by allowing us to determine when an action "accrues." The Eleventh Circuit offered us the opportunity to use our flexibility; the majority of this Court prefers rigidity without rationale. The Eleventh Circuit is capable of reading and understanding our cases; it knew our case law held that an action for wrongful death accrues at death. Majority op. at p. 727.[7]

The majority's obdurate opinion fails to scrutinize the policy considerations that underlie the wrongful death statutes. In a myopic and cursory manner, the majority points to a 1906 case and informs us that policy underlying statutes of limitation prevent the discovery rule in wrongful death cases. The rationale of *Atlantic, Valdosta & Western R. Co. v. McDilda*, 125 Ga. 468 (54 SE 140) (1906), dissipates in light of OCGA § 17-3-1 et seq. which keep open a prosecution until the criminal and crime are known. Furthermore, even under the 1790 congressional act that was relied upon in the above case, the act was tolled if the person fled from justice.[8]

The majority opinion has brought the evolution of the wrongful death statutes to an abrupt halt; the ability to punish wrongdoers and meet the social and economic needs of our citizens has ended. Steam boilers are no longer the danger they once were, in part, because wrongful death statutes have forced manufacturers to develop safer designs.

The danger we face today comes in a far more furtive manner through toxins and carcinogens that do not instantly maim or kill, but that destroy life cell-by-cell, slowly, painfully, and as finally as any major physical trauma. The people who commit homicide with these

---

[7] In *Lovett v. Garvin*, 232 Ga. 747 (208 SE2d 838) (1974), the husband was seeking damages for the death of his wife from injuries received in an automobile collision caused by the defendant's negligence. In *Burns v. Brickle*, 106 Ga. App. 150 (126 SE2d 633) (1962), the mother was seeking damages for the death of her son from injuries received in an automobile collision caused by the defendant's negligence.

[8] The Georgia case extracted the language from a 1805 United States Supreme Court opinion, *Adams v. Woods*, 2 Cranch 191 which was

> founded upon the 31st section of the act of congress of April 30th, 1790 (1 U. S. Stat. 119), which is in these words: "That no person or persons shall be prosecuted, tried or punished for treason, or other capital offence aforesaid, wilful murder or forgery excepted; unless the indictment for the same shall be found by a grand jury within three years next after the treason or capital offence aforesaid shall be done or. committed; nor shall any person be prosecuted, tried or punished for any offence not capital, nor for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence, or incurring the fine or forfeiture aforesaid: *provided, that nothing, herein contained, shall extend to any person or persons fleeing from justice.*" (Emphasis supplied.)

toxins and carcinogens are just as culpable as those who commit homicide with exploding boilers. Our public policy requires that these people be punished and the survivors be compensated. Those goals can only be achieved by tolling the statutes until the causal link and the tortfeasor are discovered.

The majority opinion creates a disincentive to produce safer products and to provide adequate warnings. Time should be on the side of "blameless ignorance," *Urie*, supra, not "dissolute knowledge."

I am authorized to state that Justice Benham joins in this dissent.

DECIDED NOVEMBER 15, 1991 —
RECONSIDERATION DENIED DECEMBER 4, 1991.

*Clarence L. Martin, Karen K. Daniels,* for appellants.
*Rogers & Hardin, Phillip S. McKinney, Allie S. Edwards, Anne E. Williams,* for appellees.
*William S. Stone, Frank J. Beltran,* amici curiae.