A92A1315. JONES et al. v. LAMON et al.
(426 SE2d 657)

SOGNIER, Chief Judge.

Bettye Jones and Luther Jones filed suit for medical malpractice

and loss of consortium against Clyde Lamon, M.D., and, under the theory of respondeat superior, against Colquitt County Hospital Authority d/b/a Colquitt Regional Medical Center. The trial court granted summary judgment to the hospital on the respondeat superior issue and to both defendants on the basis that the Joneses' action was barred by the statute of limitation. The Joneses appeal, specifically confining the issue for our consideration to the statute of limitation ruling.

The record reveals that appellant Bettye Jones underwent surgery at appellee hospital in July 1989 and was prescribed the anticoagulant drug, Coumadin, by appellee Lamon. The effect of the drug on Ms. Jones was monitored by prothrombin time tests conducted while she was in the hospital. After her discharge from the hospital on August 15, 1989, Ms. Jones continued taking daily doses of Coumadin as prescribed by Lamon. On August 26, appellants reported to Lamon that Ms. Jones was experiencing the onset of nausea, vomiting, and certain other symptoms. Ms. Jones was admitted to the hospital on August 28, 1989, at which time tests determined that she was suffering from gastrointestinal hemorrhaging, which appellants contend was caused by appellees' failure to monitor her properly while she was taking Coumadin. Appellants filed suit on August 27, 1991.

Appellants submitted the affidavit of Julian M. Loube, M.D., in which Dr. Loube averred that Ms. Jones' hemorrhaging resulted from the "inappropriate management of her Coumadin"; that the symptoms Ms. Jones experienced "could reasonably have been interpreted by most lay, medically unsophisticated people to indicate a stomach or bowel upset"; that physicians could not be certain of the underlying diagnosis without the appropriate examinations and laboratory studies conducted on Ms. Jones on August 28, 1989; and that in Dr. Loube's opinion Ms. Jones "could not have known that she was suffering from the effects of improperly administered Coumadin until her admission to the hospital on August 28, 1989."

1. Appellant Bettye Jones (hereinafter appellant) contends that her medical malpractice suit was not time barred under OCGA § 9-3-71 (a) because the limitation period on her claim did not begin to run until August 28, 1989, the date on which she discovered the causal relationship between her injury and appellees' alleged breach of duty. OCGA § 9-3-71 (a), as amended in 1985, Ga. L. 1985, p. 556, § 1, is applicable here and provides that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred."

Appellant, by asserting the limitation period for her medical malpractice claim did not begin to run until the date she discovered the cause of her injury, seeks to have this court engraft onto OCGA § 9-3-71 (a) the "discovery rule" applied to OCGA § 9-3-33, the general tort

statute of limitation, by *King v. Seitzingers, Inc.*, 160 Ga. App. 318, 320 (287 SE2d 252) (1981).[1] The "discovery rule" is based on specific language in OCGA § 9-3-33 (Ga. Code Ann. § 3-1004) providing that the limitation period for general torts begins to run from the date "the right of action accrues." See *Miles v. Ashland Chemical Co.*, 261 Ga. 726, 727 (410 SE2d 290) (1991); *King*, supra. The Supreme Court has recognized that "there are four points at which a tort cause of action *may accrue*: [I] [w]hen the defendant breaches his duty; [II] when the plaintiff is first injured; [III] when the plaintiff becomes aware of his injury; or [IV] when the plaintiff discovers the causal relationship between his injury and the defendant's breach of duty." (Emphasis supplied.) *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461, 462 (330 SE2d 344) (1985), overruled in part, *Corporation of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (1) (368 SE2d 732) (1988) (held, discovery rule in *King* not applicable to property damage statute of limitation of OCGA § 9-3-30).

It is argued that this court must apply the "discovery rule" of OCGA § 9-3-33 to OCGA § 9-3-71 (a) because when the latter statute was amended in 1985, the legislature was compelled by the Supreme Court's opinion in *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984) to abandon its attempt to classify medical malpractice claims separate from general tort claims for statute of limitation purposes. *Shessel* held that the 1976 version of § 9-3-71 (a) was unconstitutional, and OCGA § 9-3-71 (a) was amended in 1985 in order to cure the constitutional deficiency set forth in *Shessel*. See *Quinn v. Stafford*, 257 Ga. 608, 610 (4, 5) (362 SE2d 49) (1987). Therefore, to address this argument, we must examine the Supreme Court's holding in *Shessel*.

In *Shessel* the defendant breached a duty owed the plaintiff by negligently performing a sterilization procedure on her. Under the 1976 version of OCGA § 9-3-71, the statute of limitation on the plaintiff's malpractice claim began to run at the time of the procedure. (Point I in *Lumbermen's Mut. Cas. Co.*, supra.) However, the plaintiff's injury was her subsequent pregnancy. *Shessel*, supra at 57. The *Shessel* opinion does not reflect whether the point II date of the injury (i.e., the date the plaintiff became pregnant) was the same as the point III date of discovery of the injury (i.e., the date the plaintiff learned she was pregnant), although the court did recognize the dis-

---

[1] The Supreme Court, in a case decided since *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984), held that the discovery rule of *King*, supra " '(is confined) to cases of bodily injury [under OCGA § 9-3-33] which develop only over an extended period of time.' [Cit.]" *Corporation of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (1) (368 SE2d 732) (1988). See also *Miles v. Ashland Chemical Co.*, 261 Ga. 726, 727 (410 SE2d 290) (1991).

tinction between the two.[2] However, because of the nature of the injury, the point III date of the discovery of the injury was *identical* to the point IV date of the discovery of the cause of the injury. Thus, the *Shessel* court did not have to distinguish between point III and point IV in its opinion.

Accordingly, when the *Shessel* court held the 1976 version of OCGA § 9-3-71 to be unconstitutional, the Supreme Court was not focused on the differences among points II, III, and IV, all of which involve the varying times at which the injury affects a plaintiff, because those differences were not in issue. Instead, the *Shessel* court focused on the difference between a limitation period that commenced on the date of a defendant's breach of a duty (point I) rather than on the date of an injury to the plaintiff (points II, III, and IV). It was "this difference in the beginning point for calculating the limitation period which [was] the focal point of [the *Shessel*] appeal," id. at 57, and constituted the basis for the holding therein that the 1976 version of OCGA § 9-3-71 was unconstitutional because similarly situated parties were not treated alike. Id. at 59.

This analysis of *Shessel* reveals that the constitutional deficiency in the 1976 version of OCGA § 9-3-71 (a) could be cured by focusing the statute's "beginning point for calculating the limitation period" on the date of an injury to the plaintiff rather than on the date of the defendant's breach of a duty. The legislature, by amending OCGA § 9-3-71 (a) to provide that malpractice actions must be brought within two years after the date "on which an injury or death arising from a negligent or wrongful act or omission occurred," acted in conformity with the holding in *Shessel* because the "beginning point" is now determined by looking to the consequence of the defendant's acts on the plaintiff.

Contrary to appellant's contention, nothing in *Shessel* compelled the legislature to select the point IV date of discovery of the cause of the injury as the beginning point for calculating the limitation period. Indeed, *Shessel* contains language intimating the Supreme Court was unwilling to approve setting the beginning point even at the earlier point III date of discovery of the injury. See id. at 57, 58. It is not necessary to over-analyze the language in *Shessel*, however, given our determination that the legislature, when amending OCGA § 9-3-71 (a) in 1985, was not required by *Shessel* to enact a redundant statute duplicating the provisions of OCGA § 9-3-33 and thereby abolish all distinction between the medical malpractice and general tort statutes of limitation by providing for identical commencement dates for the

---

[2] "The general tort limitation [in OCGA § 9-3-33] begins only when the action 'accrues' and that is no sooner than the date of injury [point II] and perhaps no sooner than the date of discovery [point III]. [Cit.]" *Shessel*, supra at 58.

limitation periods in each statute.[3]

The plain language in OCGA § 9-3-71 (a) that the statute of limitation in a medical malpractice action begins to run on the date "on which an injury . . . arising from [an act of malpractice] occurred" would seem to support the conclusion that the limitation period commences to run on the date of the injury, i.e., point II. This court in *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988), without any analysis of the matter, stated that the date an injury occurs under the statute is point III, "the date the injury is discovered. *Shessel v. Stroup*, supra." Id. at 708.[4] However, it is not necessary to resolve that issue here because, pretermitting whether the time limitation commenced running on the very first day appellant went unmonitored (point II), the evidence in the case sub judice establishes uncontrovertedly that appellant was aware of her injury (point III) at least by August 26, the date on which she contacted appellee Lamon because she was and had been experiencing nausea and the other symptoms of the internal hemorrhaging from which she was suffering. Thus, the fact appellant did not know and, according to Dr. Loube's uncontroverted affidavit, could not have known the *cause* of her suffering before August 28, does not affect the application of OCGA § 9-3-71 (a) when the evidence establishes that appellant's injury *occurred* and had physically manifested itself to her by August 26. Appellant's subjective belief that her suffering stemmed from a stomach virus or some other cause unrelated to appellees' alleged negligence does not change the fact that her injury occurred by August 26.

Therefore, because appellant Bettye Jones failed to file suit within two years of August 26, the date on which her injury arising from appellees' alleged negligent act or omission occurred, OCGA § 9-3-71 (a), her complaint was untimely as a matter of law. Accordingly, the trial court's grant of summary judgment in favor of appellees as to her claim is affirmed.

2. We agree with appellant Luther Jones that the trial court erred by granting summary judgment to appellee Lamon as to his claim for loss of consortium. No question of fact exists that his loss of consortium claim remains viable because the statute of limitation applicable to his claim, the four year period set forth in OCGA § 9-3-33,

---

[3] Our determination that the legislature was not compelled to enact OCGA § 9-3-71 with the same commencement date as that in OCGA § 9-3-33 is also supported by the rule of construction which " 'forbids that two provisos should be treated as having no more scope or significance than one of them would have if standing alone. . . .' [Cit.]" *Butterworth v. Butterworth*, 227 Ga. 301, 304 (180 SE2d 549) (1971).

[4] Contrary to the dissent's assertion, nothing in *Whitaker* stands for the proposition that the distinction between the statutes of limitation in OCGA §§ 9-3-71 and 9-3-33 has been abolished. *Whitaker* does not address and thus does not constitute controlling authority for the dissent's interpretation of OCGA § 9-3-71 (a).

has not expired. See *Elwell v. Haney*, 169 Ga. App. 481, 482 (313 SE2d 499) (1984) (running of limitation for personal injury claim does not bar derivative loss of consortium claim). We note that the alternative basis given by the trial court for its grant of summary judgment in favor of appellee hospital was not challenged on appeal. Hence, that judgment is presumed to be binding and in effect. See generally *Jones v. First Nat. Bank of Atlanta*, 147 Ga. App. 441 (249 SE2d 154) (1978).

*Judgment affirmed in part and reversed in part. Birdsong, P. J., Carley, P. J., and Andrews, J., concur. Beasley and Johnson, JJ., concur specially. McMurray, P. J., Pope and Cooper, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur with the majority to the extent that the 1985 statutory change may in effect be discovery-of-the-injury rule, at least when occurrence is simultaneous with knowledge of the occurrence. That is the case here, unless the occurrence itself was even before August 26.

The 1985 Act made it two years after the date the injury occurred. That is the same language which the Georgia Supreme Court implied in *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984), would be acceptable: "We hold that OCGA § 9-3-71 is a denial of equal protection and therefore unconstitutional as applied to personal injury claims in which *injury occurs* more than two years after the negligent or wrongful act or omission occurred." (Emphasis supplied.) *Shessel*, supra at 59.

Since *Shessel* equates that event with accrual, there is little difference between OCGA § 9-3-71 (two years from the date on which the injury occurred) and OCGA § 9-3-33 (two years after right of action accrues), except that OCGA § 9-3-71 tailors the general accrued language to more specifically state it as meaning, in medical malpractice, the date the injury occurs.

If there is a discovery-of-the-injury rule in Georgia, it would make no difference in this case whether it is part of OCGA § 9-3-71 or not, because the occurrence was simultaneous with or even earlier than knowledge of the occurrence. The limitation period for filing suit began running no later than August 26.

I am authorized to state that Judge Johnson joins in this special concurrence.

McMURRAY, Presiding Judge, dissenting.

In 1976, the General Assembly enacted legislation which classified medical malpractice actions separately from other tort actions for statute of limitation purposes. The 1976 statute provided that: "Except as otherwise provided in this chapter, an action for medical malpractice shall be brought within two years after the date on which the

negligent or wrongful act or omission occurred." Ga. L. 1976, pp. 1363, 1364, § 1. In *Allrid v. Emory Univ.*, 249 Ga. 35, 37 (1a) (285 SE2d 521), the Supreme Court acknowledged this language "to be an extremely harsh limitation in application because it has the effect, in many cases, of cutting off rights before there is any knowledge of injury." Shortly thereafter, the Supreme Court held that the 1976 statute of limitation violated the Equal Protection Clause in those medical malpractice actions in which the alleged negligence produced no injury until more than two years after such alleged negligence occurred. *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155); *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484).

In 1985, the 1976 statute of limitation for medical malpractice claims, by then contained in OCGA § 9-3-71, was amended by Georgia Laws 1985, p. 556, § 1. The 1985 amendment added a five-year statute of ultimate repose as paragraph (b) while paragraph (a) inserted in lieu of the 1976 language provides that: "Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful omission occurred." See *Quinn v. Stafford*, 257 Ga. 608, 610 (5) (362 SE2d 49). This change in the statutory language was apparently intended to cure the constitutional deficiency noted in such cases as *Shessel v. Stroup*, 253 Ga. 56, supra, and *Clark v. Singer*, 250 Ga. 470, supra.

The question as to whether the 1985 amendment also altered the substance of the 1976 law as applied after the *Shessel* and *Clark* decisions appears to have been answered by our decision in *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (1) (374 SE2d 106) which, in reference to the 1976 statute, states that: "At the time [plaintiff] Zirkle's cancer was diagnosed [in May or June 1985], Georgia law permitted a patient to bring a medical malpractice claim within two years from the date of the injury caused by an alleged negligent act. See *Shessel v. Stroup*, [supra]." As this statement of the construction of the 1976 medical malpractice statute of limitation after the *Clark* and *Shessel* decisions is indistinguishable from the language of paragraph (a) of the 1985 amendment which became effective on July 1, 1985, and which is applicable to this case, it is my view that paragraph (a) of the 1985 statute was not a substantive change of the statute of limitation as construed following *Clark* and *Shessel*, but was enacted solely to remove the constitutional faults of the 1976 language. The importance of this conclusion is that the decisions in *Whitaker*, as well as *Shessel*, may clearly be recognized as controlling authority on the issues present in the present appeal and may not be distinguished as relating only to statutory language which has now been superseded.

As in *Whitaker*, the case sub judice involves an injury which occurs subsequent to the date of medical treatment or negligence.

"When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered. *Shessel v. Stroup*, supra." *Whitaker v. Zirkle*, 188 Ga. App. 706, 708 (1), supra.

The alleged negligence in the case sub judice is Dr. Lamon's prescribing Coumadin without patient monitoring. The resulting injury was the adverse reaction to Coumadin. Thus, the statute of limitation commences from the date of discovery of symptoms of an adverse reaction to Coumadin. Discovery of an injury relates to plaintiff Bettye Jones' actual discovery that an injury has been suffered or where by the exercise of reasonable diligence plaintiff Bettye Jones should have discovered it. *Shessel v. Stroup*, 253 Ga. 56, 57, fn. 2, supra. In the case sub judice, a question remains for the jury as to when plaintiff Bettye Jones actually discovered or should have discovered her injury. When viewed in the light most favorable to the plaintiffs as the parties opposing the motion for summary judgment, the evidence shows that there was no discovery of the adverse reaction to Coumadin until August 28, 1989, the date of Bettye Jones' readmission to the hospital. This action having been filed within two years of that date, the superior court erred insofar as its grant of summary judgment was based on a conclusion that plaintiffs' actions were barred by the statute of limitation. I would hold that the grant of summary judgment in favor of defendant Lamon was reversible error.

The majority opinion devotes considerable effort to the question of when a medical malpractice action accrues without ever reaching a clear conclusion. While the majority advances an hypothesis in favor of the point II date of injury, it acknowledges the holding in *Whitaker* applying the point III date the injury is discovered. The majority then proceeds to avoid the obvious issue as to which should be applied in the case sub judice by purporting to distinguish *Whitaker* through its construction of the facts in the case sub judice. While the majority maintains that "the evidence in the case sub judice establishes uncontrovertedly that appellant was aware of her injury (point III) at least by August 26, the date on which she contacted appellee Lamon because she was and had been experiencing nausea and the other symptoms of the internal hemorrhaging from which she was suffering," this entirely disregards the evidence via expert affidavit noted earlier in the majority opinion that Ms. Jones, like any medically unsophisticated lay person, could reasonably have interpreted the symptoms to indicate a stomach or bowel upset and that physicians could not be certain of the problem without examination and laboratory studies so that it could not have been known that Ms. Jones was suffering from the effects of improperly administered Coumadin until her admission to the hospital on August 28, 1989. In my view, the evidence would not permit an equating of the ambiguous

symptoms suffered by Ms. Jones on August 26 with actual or constructive knowledge of the injury she had suffered. Since Ms. Jones had no knowledge of her injury until August 28, application of the holding in *Whitaker* would require that the period of limitation began to run on that day. Contrary to the majority's view, I see the *Whitaker* case, not as abolishing the differences between OCGA §§ 9-3-71 and 9-3-33, but as being the only decision from either of the Georgia appellate courts which was decided under the current version of OCGA § 9-3-71 and directed to the issues on appeal, therefore I would follow this precedent.

I am authorized to state that Judge Pope joins in this dissent.

COOPER, Judge, dissenting.

The pivotal question in this case is whether the Supreme Court in *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984) held that any difference in treatment between medical malpractice actions and other negligence actions with respect to when the limitation period begins to run was unconstitutional, or whether it simply held that a statute providing that the limitation period for medical malpractice begins to run at the time of the negligent act rather than the time of the injury was unconstitutional. In choosing the latter alternative, the majority has ignored the language as well as the rationale of *Shessel*. While the time period for bringing a negligence action under the general tort statute of limitation begins to run when the cause of action accrues, the time period for bringing a medical malpractice action under the statute challenged in *Shessel* began to run on the date the negligence occurred. "It is this *difference* in the beginning point for calculating the limitation period which is the focal point of this appeal." (Emphasis supplied.) 253 Ga. at 57. *Shessel* was decided on equal protection grounds. Its purpose and effect, therefore, was not to establish a minimum level of protection for medical malpractice plaintiffs as the majority suggests, but to establish that there was no legitimate basis for different treatment. Indeed, in the process of comparing how the *Shessel* plaintiff's case would be treated under the general tort statute of limitation with how it would be treated under that for medical malpractice actions and concluding that different treatment was impermissible, the *Shessel* Court noted the possibility that Georgia courts might apply the discovery rule if the case arose in a general tort context, implying that "[i]f Georgia has adopted the discovery rule," application of the rule would be part of the treatment that must be the same. See id. Because I cannot accept the majority's narrow interpretation of *Shessel*, I dissent.

.

DECIDED DECEMBER 4, 1992 —
RECONSIDERATION DENIED DECEMBER 17, 1992.

*Brimberry, Kaplan, Campbell & Donaldson, Jerry W. Brimberry*, for appellants.

*Whelchel, Whelchel & Carlton, James C. Whelchel*, for appellees.